NO. 94-099

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

    Plaintiff and Respondent,

  -v-

THOMAS J. STEFFES,

    Defendant and Appellant.



FILED

DEC 21 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Charles F. Moses, Moses Law Firm, Billings, Montana

    For Respondent:

    Hon. Joseph P. Mazurek, Attorney General, Patricia
Jordan, Assistant Attorney General, Helena, Montana;
Dennis Paxinos, Yellowstone County Attorney, Dale R.
Mrkich and Marsha Sept, Deputy Yellowstone County
Attorneys, Billings, Montana

Submitted on Briefs:  September 15, 1994

Decided:  December 21, 1994

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Defendant/appellant Thomas J. Steffes (Steffes) was found guilty of three counts of deviate sexual conduct **following** a jury trial in the District Court for the Thirteenth Judicial District, Yellowstone County. Steffes appeals the District Court's denial of his motion for a new trial, and its judgment and commitment sentencing Steffes to a term of ten years' imprisonment on each count, to be served concurrently. We affirm.

Steffes raises nine issues on appeal.

1. Whether the District Court erred in denying the motion to dismiss based on insufficiency of the amended information?

2. Whether the District Court erred in admitting other acts evidence?

3. Whether the District Court erred in limiting the expert testimony of a psychologist?

4. Whether the District Court erred in denying the motion for acquittal on the ground of variance at the close of the State's case?

5. Whether the District Court erred in excluding evidence of the alleged prior sexual abuse of a victim?

6. Whether the District Court erred in refusing Steffes' renewed request for production of evidence regarding the alleged prior sexual abuse of the victim?

7. Whether the District Court erred in refusing a lesser included offense instruction?

8. Whether the District Court erred in instructing the jury?

9. Whether the District Court erred in not suppressing the search warrant?

Steffes was charged by an amended information with two counts of deviate sexual conduct for knowingly causing J.W., who was

thirteen years old at the time of trial, to engage in deviate sexual relations without his consent, and one count of deviate sexual conduct for knowingly causing R.T., who was ten years old at the time of trial, to engage in sexual conduct without his consent in violation of § 45-5-505, MCA.

J.W. testified concerning the events which resulted in the first two charges against Steffes. Regarding the first incident, J.W. testified that he was spending the night with Steffes' son, M.S., in September 1990. The two boys were lying awake in the T.V. room when Steffes came in and asked J.W. to come upstairs. J.W. complied and followed Steffes into his bedroom. Steffes then asked J.W. if he knew what a "hard-on" was and asked J.W. to pull his pants down. J.W. initially said no, but did so after Steffes repeated his request. Steffes then asked J.W. to lay down on the bed and began to stimulate J.W.'s penis. Steffes asked J.W. if it felt good. J.W. asked Steffes if he could leave, and Steffes told him not to tell anyone about the incident. Steffes then went into the bathroom, and J.W. went back downstairs to the T.V. room.

J.W. testified that he did not tell M.S. or anyone else what had happened at that time because he knew what had happened was wrong, and that he was afraid to tell anyone what had happened because he did not know what Steffes would do to him if he did.

With regard to Count II, J.W. testified that on Father's Day, June 16, 1991, he went to the Steffes' home where J.W., M.S., Steffes and his daughter had a water balloon fight. After the fight, Steffes watched while J.W. and M.S. dried off and changed

3

into dry clothes. The two boys then went to the basement to watch a movie. Later in the afternoon, J.W. went to get his clothes off the line, and he encountered Steffes in the hallway. Steffes asked J.W. to come into his bedroom, J.W. replied that he was going to the bathroom to change his clothes, and Steffes told him he could use his bathroom. While J.W. was changing his clothes, Steffes came into the bathroom and asked J.W. to come into his room.

Steffes then asked J.W. to come over to his dresser, where he took a red condom out of one of the top drawers, and told J.W. what it was. Steffes then pulled out a little yellow bottle of Rush, a sexual stimulant, put it up to J.W.'s nose, and asked him to smell it. Steffes told J.W. the Rush would give him an erection, and asked J.W. if he had one. Steffes pulled out J.W's shorts and said that he did. Steffes then laid on the bed and asked J.W. to come over. J.W. went over to the bed, and Steffes took his own penis out and forced J.W. to feel it. J.W. took his hand away, and left the room.

That night J.W. could not sleep as a result of what had happened that day. He went to his parents' room and told his dad that Steffes had "touched me in a way I didn't think dads did . . . [and] I didn't like it." J.W.'s mother who had overheard the conversation immediately called 911, and an officer came to the house and took a statement from J.W. Two days later, on June 18, 1991, Detective Richardson, conducted a taped interview of J.W.

R.T. testified at trial concerning the incident he was involved in which resulted in the third charge against Steffes.

4

R.T. explained that in May or June of 1991, he was at Steffes' house playing with M.S. R.T. and M.S. were wrestling while Steffes was watching T.V. Steffes asked R.T. to come over to the couch where he was sitting, and then stuck his hands down R.T.'s pants and touched his penis.

R.T. also testified that one night while spending the night at the Steffes' home, he and M.S. took a shower together, and Steffes came in with a video camera. Steffes told the boys the camera was off, but R.T. saw a red light flashing on the camera, so he thought Steffes was videotaping them.

Detective Richardson conducted the investigation of J.W.'s complaint against Steffes. After taking J.W.'s statement, he obtained a search warrant for the Steffes' residence to look for the condom and the bottle of Rush that J.W. had described in his statement. Upon executing the search warrant, Detective Richardson found five colored condoms and four bottles of Rush in the left-hand side drawer of Steffes' dresser.

During the course of the investigation Detective Richardson also contacted R.T.'s parents and asked them if anything unusual had happened to R.T. while he was at the Steffes' home. R.T.'s father then asked R.T. if anything unusual had happened and R.T. initially said no. The next evening R.T. remembered the offense and told his parents about Steffes touching him and videotaping him. R.T. was then interviewed by Detective Richardson.

During trial, the State introduced testimony from David Thorsby, a resident of South Dakota. Thorsby testified that in the

5

fall of 1986, when he was eleven years old, he went to the Steffes' home to help Steffes' tear out insulation from his attic. Thorsby worked for Steffes for about a week, but quit because Steffes' brushed up against him, prodded him with a screwdriver, and caressed his buttocks and around his genital area. Thorsby reported the incidents to the police and charges were filed against Steffes. However, the case was later dismissed for lack of a speedy trial. Steffes testified at trial that he was not home during the time Thorsby alleged the incidents occurred.

Steffes denied committing any offenses against J.W. and R.T. Rather, Steffes' account of the events concerning Count I was that on the night J.W. slept over, he had caught J.W. and his son naked in one sleeping bag, and M.S. accused J.W. of molesting him. Steffes testified that he explained to J.W. that this kind of conduct was not allowed and that he should tell J.W.'s parents. However, after speaking to his wife about the incident, Steffes' testified he decided not to tell J.W.'s parents.

In testifying about Count II, Steffes stated that he found J.W. going through his dresser drawer and J.W. asked him not to tell his parents about him taking things. Steffes denied any contact or touching.

With respect to Count III, Steffes denied that he touched or videotaped R.T., and alleged that both his wife and M.S. would have been in the room at the time of the alleged incident. Steffes' wife and children testified on his behalf.

Additional facts will be presented as necessary for discussion

of the issues.

## ISSUE 1

Whether the District Court erred in denying the motion to dismiss based on insufficiency of the amended information?

In his motion to dismiss, Steffes argues that the amended information was insufficient because it failed to inform him of all of the essential elements constituting the crime of deviate sexual conduct. Specifically, Steffes contends that the amended information did not contain the definition of "sexual contact."

Montana follows the general rule that an information is sufficient if it properly charges an offense in the language of the statute describing the offense. State v. Matson (1987), 227 Mont. 36, 43, 736 P.2d 971, 975. This rule supports the underlying purpose of an information which is to "reasonably apprise the person of the charges against him so that he may have an opportunity to prepare his defense." State v. Matt (1990), 245 Mont. 208, 213, 799 P.2d 1085, 1088. In determining if an information is sufficient, the court examines whether a person of common understanding would know what was charged. Matt, 799 P.2d at 1088, citing, State v. Longneck (1981), 196 Mont. 151, 640 P.2d 436.

At the time Steffes was charged, the applicable statute required that the charging document (1) state the name of the offense; (2) cite in customary form the statute, rule, or other provision of law which the defendant is alleged to have violated; (3) state the facts constituting the offense in ordinary and

concise language and in such a manner as to enable a person of common understanding to know what is intended. Section 46-11-401(1)(c), MCA (1989).

While Steffes agrees with these general rules, he argues that the statute defining the crime of deviate sexual conduct, § 45-5-505, MCA, is itself deficient because it does not contain the essential elements that are required to be alleged and proven beyond a reasonable doubt. Steffes maintains that touching for the purpose of arousing or gratifying the sexual desire of either party is an essential element of the crime of deviate sexual conduct. Because § 45-5-505, MCA, and the charging document did not contain this language, Steffes alleges the information was insufficient.

Section 45-5-505(1), MCA provides:

> Deviate sexual conduct. A person who knowingly engages in deviate sexual relations or who causes another to engage in deviate sexual relations commits the offense of deviate sexual conduct.

While the terms "deviate sexual relations" and "sexual contact" are not defined in § 45-5-505, MCA, both terms are defined elsewhere in the code. "Sexual contact, " is defined as "any touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party." Section 45-2-101(60), MCA. "Deviate sexual relations" means "sexual contact or sexual intercourse between two persons of the same sex or any form of sexual intercourse with an animal." Sections 45-2-101(20), MCA.

Steffes relies on Russell v. United States (1962), 369 U.S. 749, 765, 82 S.Ct. 1038, 1047-48, 8 L.Ed.2d 240, 251, to support

8

his argument that the words of a statute may not be sufficient in a charging document if the words themselves do not "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."  In Russell, six defendants were charged for refusing to answer certain questions after being summoned before a congressional subcommittee.  The defendants moved to quash the indictments for failure to state the subject under investigation at the time of the subcommittee's interrogation of the defendants. The motions were denied, and the issue was preserved on appeal and brought before the United States Supreme Court on a writ of certiorari.  Russell, 369 U.S. at 752-53, 82 S.Ct. at 1041, 8 L.Ed.2d at 244-45.  In determining the sufficiency of the indictments, the Court held,  "[w]here guilt depends so crucially upon.  . a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the statute." Russell, 369 U.S. at 764, 82 S.Ct. at 1047, 8 L.Ed.2d 240, at 251.  Because specific identification of facts was necessary for the crime charged, the Court reversed the convictions.

However, in Hamling v. United States (1974), 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, the United States Supreme Court distinguished between cases where the offense charged depends upon "a specific identification of fact," and instances where the definition of the offense is not one of fact, but one of law.  The defendants in Hamling, were charged and convicted of mailing and

conspiring to mail obscene material.  Hamling, 418 U.S. at 91, 94

S.Ct. at 2894-95, 41 L.Ed.2d at 605.  Relying on the holding in

Russell, the defendants alleged that the statute they were charged

under was insufficient to give them notice of the crime with which

they were charged.  Hamling, 418 U.S. at 117, 94 S.Ct. at 2907, 41

L.Ed.2d at 620.

The Court disagreed and held that the definition of obscenity

was not a question of fact, but one of law, and as a legal term of

art it was sufficiently definite  in legal meaning to give the

defendants notice of the charge against them. Hamling, 418 U.S. at

118-19, 94 S.Ct. at 2908, 41 L.Ed.2d at 621.  The Court noted that

a charging document need not contain all of the definitions of the

legal  terms of  art used in the statute  creating the crime.

Hamling, 418 U.S. at 118-19, 94 S.Ct. at 2908, 41 L.Ed.2d at 621.

In the instant case the amended information cited the name of

the offense and the statute Steffes' was alleged to have violated,

along with the time and place of each offense.  The  information

also stated that "Steffes, DOB 11-24-47, knowingly caused . . .

[the victim] to engage in deviate sexual relations without his

consent."  In addition, the State filed an affidavit in support of

its motion for leave to file the amended information which

contained sufficient facts to apprise Steffes of the charges

against him.

Therefore, we conclude that defendant's contention that the

information was insufficient because it did not specify that the

sexual contact was for the purpose of gratifying the sexual desire

10

of either party, is without merit. The information did not have to allege this as both sexual contact and deviate sexual conduct are legal terms of art which are defined elsewhere in the code. We therefore hold that the District Court did not err in denying Steffes' motion to dismiss based on insufficiency of the amended information.

ISSUE 2

Whether the District Court erred in admitting other acts evidence?

On May 27, 1992, the State filed its notice of intent to use evidence of other crimes, wrongs or acts as required by State v. Just (1979), 184 Mont. 262, 602 P.2d 957, and State v. Matt (1991), 249 Mont. 136, 814 P.2d 52. Subsequently on August 13, 1992, Steffes filed a motion in limine seeking to limit the other acts evidence. After determining that the proffered other acts evidence met the requirements of Just and Matt, the modified Just rule, the District Court denied Steffes' motion. On appeal, Steffes argues that the District Court erred in denying his motion and admitting the other acts evidence for two reasons.

First, Steffes contends that the State's Just notice was procedurally defective because it failed to specify the purposes for which the evidence would be offered. Second, Steffes contends that the District Court erred by failing to make any findings or conduct a hearing to determine the admissibility of the evidence.

This Court reviews a district court's admission of other acts evidence to determine whether the district court abused its discretion. State v. Johnston (1994), 51 St.Rep. 1078, 1079, ___

11

P.2d \_\_\_, \_\_\_.

Steffes maintains that Just notice was procedurally defective because the State used the impermissible "shotgun" approach, because the notice named several of the exceptions from Rule 404(b), M.R.Evid., for which other acts may be admissible. Steffes relies on State v. Croteau (1991), 248 Mont. 403, 812 P.2d 1251, to support his argument. In Croteau, the State's Just notice contained all but one of the named Rule 404(b) exceptions. Croteau, 812 P.2d at 1254-55. We held that this type of notice failed to meet the procedural requirements of Just, because it did not specifically state the relevant reason for admitting the other acts evidence. We also held that future Just notices "must identify the specific Rule 404(b) purpose for which it [the other acts evidence] is to be admitted." Croteau, 812 P.2d at 1255.

In the instant case the notice stated:

> The foregoing [the other acts] evidence is relevant in that it tends to establish plan, knowledge and absence of mistake or accident concerning the commission of the offenses currently charged . .

We conclude that this notice was sufficient to apprise Steffes of the purpose for which the evidence was sought to be introduced and that Steffes' reliance on Croteau is misplaced. While Croteau does stand for the proposition that the "shotgun" approach is impermissible when identifying the purpose for which the other acts evidence is to be introduced, it did not prohibit the election of more than one applicable purpose for the admission of other acts evidence. In this case, the alleged purposes of "plan, knowledge and absence of mistake or accident," are sufficient to notify

12

Steffes of the purpose for which the other acts evidence was to be introduced given that Steffes defended on the basis that his conduct was not what the victims alleged it to be.

Steffes second argument is also without merit. A district court need not issue findings or conduct a full evidentiary hearing to determine the admissibility of other acts evidence. Rather, the court must determine if the evidence meets both procedural requirements and substantive requirements. State v. Little (1993), 260 Mont. 460, 473, 861 P.2d 154, 162. The procedural requirement for the notice provides in part:

> Evidence of other crimes, wrongs, or acts may not be received unless there has been written notice to the defendant that such evidence is to be introduced. The notice to the defendant shall specify the other crimes, wrongs, or acts to be admitted, and the specific rule 404(b) propose or purposes for which it is to be admitted.

Johnston, 51 St.Rep. 1078, 1079,    P.2d ___, ___. The modified Just rule sets forth the substantive requirements of the admission of other acts evidence. Little, 861 P.2d at 163. Here, the State provided Steffes with written notice of its intent to use other acts evidence, and the District Court determined that proffered evidence met the requirements of the modified Just rule. In addition, the State filed the documents regarding the prior charges under seal, thereby apprising the District Court of the proffered testimony. Therefore, we conclude that Steffes' second argument is without merit, and hold that the District Court did not abuse its discretion in admitting the other acts evidence.

13

ISSUE 3

Whether the District Court erred in limiting the expert testimony of a psychologist?

Prior to trial, Steffes gave notice that he intended to call Sandra Whaley-Olson, a psychologist, to testify to the reliability and validity of the statements the victims gave to the police officers investigating the case. The State filed a motion in limine to exclude Whaley-Olson's testimony on two grounds, only one of which is pertinent here. The State argued that the purpose of Whaley-Olson's testimony was to show that the victims' statements were unreliable, and thus were not to be considered credible. The State maintained that this opinion testimony is inadmissible because it invades the province of the jury to decide for themselves the credibility of the child witnesses.

The court allowed Whaley-Olson to testify to the general procedures used to conduct interviews of alleged child sexual abuse victims, but would not allow her to give her opinion with respect to the validity or reliability of the interviews conducted in this case, or the credibility of the child victims. The court concluded that Whaley-Olson did not possess the necessary qualifications required by State v. Scheffelman (1991), 250 Mont. 334, 820 P.2d 1293, that an expert must possess before testifying about the credibility of a victim in a child sexual abuse trial. Steffes claims the court erred by so limiting Whaley-Olson's testimony.

The determination of whether a witness is an expert is within the discretion of the district court, and will not be disturbed on appeal absent an abuse of discretion. State v. Evans (1991), 247

14

Mont. 218, 228-29, 806 P.2d 512, 519.

The threshold test to determine whether an expert witness may testify directly about the credibility of a child sexual abuse **victim** is that the child victim must testify and the child's credibility **must** be attacked. <u>Scheffelman,</u> 820 P.2d at 1298. There is no argument that the threshold test was met in this case.

Upon meeting the threshold test, the court must then determine whether the expert is properly qualified. The court must determine whether the expert has: (1) extensive first hand experience with sexually abused and non-sexually abused children; (2) thorough and up to date knowledge of the professional literature on child sexual abuse; and (3) objectivity and neutrality about individual cases as are required of other experts. <u>Scheffelman,</u> 820 P.2d at 1298.

Upon review of the transcript we find that Whaley-Olson did not meet the first criteria, as she testified she had very little first hand experience working with sexually abused children, as is evidenced by the following testimony.

Q: [By State's counsel] . . Have you interviewed sexually abused children?

A: [Whaley-Olson] Not a lot.

.

Q: [By the Court] Could you give me your--first your extensive, firsthand experience with sexually abused c h i l d r e n ;

A: [Whaley-Olson] Well, I'm not a child psychologist. I don't specialize in child abuse cases. It's not my area of specialty. In the course of training to become a psychologist, I have interviewed a number of children. I have taught how to interview children. I still supervise some counselors in California. Most of those were not sexual abuse.

15

The instant case is similar to the facts of <u>Scheffelman</u>, where we found that an expert was not qualified to give her opinion concerning the child sexual abuse victim's credibility because she had no experience dealing with non-sexually abused children. Likewise, here, we conclude that without extensive first hand experience dealing with sexually abused children, an expert is not qualified to testify concerning the credibility of a child sexual abuse victim. Therefore, we hold that the District Court did not abuse its discretion in limiting Whaley-Olson's testimony because she did not meet the requirements of <u>Scheffelman.</u>

ISSUE 4

Whether the District Court erred in denying the motion for acquittal on the ground of variance at the close of the State's case?

Steffes moved for a judgment of acquittal at the end of the State's case, on the ground that a variance occurred on Counts I and III. Steffes argues that the District Court erred in denying his motion because no testimony was presented for Counts I and III showing that he caused another to engage in deviate sexual relations. Rather, the evidence indicated that the victims were passive participants in both Counts I and III, and therefore, the State should have charged him with engaging in deviate sexual relations.

It is well established that allegations and proof must correspond for a defendant to be properly convicted. State v. Holmes (1984), 212 Mont. 526, 533, 687 P.2d 662, 666. The purpose of this rule is to protect the defendant from being misled at trial

16

and prosecuted twice for the same crime.  <u>Holmes,</u> 687 P.2d at 666, citing, State v. Rindal (1965), 146 Mont. 64, 404 P.2d 327. If there is a variance between the allegations and proof, the charge should not be dismissed unless a defendant's substantial rights are prejudiced.  <u>Holmes,</u> 687 P.2d at 666.

Here, the State filed an affidavit outlining the events surrounding both Counts I and III.  While both Counts I and III alleged Steffes touched the victims' penises, rather than causing the victims to touch his penis, the charging documents gave Steffes adequate notice of the crimes he must defend against.  Knowing this, he cannot now complain that he was surprised or misled, or that he was in danger from being prosecuted twice for the same acts.  Accordingly, we conclude that no substantial rights of Steffes were prejudiced by the language contained in the information.  The decision whether to direct a verdict of acquittal lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion.  State v. Bromgard (1993), 261 Mont. 291, 293, 862 P.2d 1140, 1141. We hold that the District Court did not abuse its discretion in denying Steffes' motion for judgment of acquittal.

ISSUE 5

Whether the District Court erred in excluding evidence of the alleged prior sexual abuse of **a victim?**

During trial preparation, Steffes filed a request for supplemental discovery regarding one of the victims, claiming he had been a victim of sexual abuse in the past and had possibly been in counseling.  The defense requested counseling notes and

17

information about the incident. Subsequently, the State filed a motion in limine to exclude any evidence regarding any alleged prior sexual conduct of the victims. The District Court denied the defendant's discovery request, and granted the State's motion in limine citing § 45-5-511(2), MCA, the rape shield statute. On appeal, Steffes argues that the rape shield statute violates his Sixth Amendment right to confront witnesses against him.

Section 45-5-511(2), MCA, provides:

> No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.

The purpose of § 45-5-511(2), MCA, is to prevent the trial from becoming a trial of the victim, State v. Van Pelt (1991), 247 Mont. 99, 103, 805 P.2d 549, 552; Compiler's Comments for Section 45-5-511, MCA, Annotations. We have determined that inadmissible evidence concerning sexual conduct of the victim includes prior sexual abuse. State v. Rhyne (1992), 253 Mont. 513, 519, 833 P.2d 1112, 1116. We also recognize that the defendant has a constitutional right to confront witnesses against him. U.S. Const. amend. VI; Mont. Const. Art. II, Sec. 24. In balancing the rights of victims and the rights of the defendant, we have stated:

> The Sixth Amendment is not absolute, and "may bow to accommodate other legitimate interests in the criminal trial process." The rape shield statute has been upheld as a legitimate interest justifying curtailment of the constitutional right to confront witnesses. [Citations omitted.]

State v. Howell (1992), 254 Mont. 438, 445-46, 839 P.2d 87, 91.

18

This Court has addressed the issue of whether the rape shield statute violates a defendant's constitutional right to confront witnesses on several occasions. State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193; Van Pelt, 805 P.2d 549; Rhyne, 833 P.2d 1112. In those cases we have determined that a defendant's constitutional right to confront witnesses is not violated by the exclusion of evidence of the victim's prior sexual abuse unless the victim's accusations or allegations of prior sexual abuse have been proven to be false. Anderson, 686 P.2d at 200, Van Pelt, 805 P.2d at 552-53, Rhyne, 833 P.2d at 1116.

Therefore, while it is permissible for a defendant to examine a complaining witness in a sex offense case where there are prior accusations which have been proven to be false, there is no claim that the alleged victim in this case has made prior false sexual abuse allegations.

We review a district court's conclusion of law to determine whether the district court's interpretation of the law was correct. State v. Sullivan (1994), 51 St.Rep. 827, 829, 880 P.2d 829, 832. We hold that the District Court was correct in deciding that the rape shield statute did not violate Steffes' right to confrontation.

ISSUE 6

Whether the District Court erred in refusing Steffes' renewed request for production of evidence regarding the alleged prior sexual abuse of the victim?

On May 4, 1994, Steffes moved the court to reconsider its ruling that the prior sexual abuse of one of the victims could not

19

be referred to during trial. Steffes alleges the prior sexual conduct of the victim is relevant to rebut the testimony that the victim acquired his knowledge of sexual matters at school. Steffes also contends that the testimony is relevant to rebut the victim's mother's testimony that when the victim told her about the incidents she related that she had never seen her son so upset. The District Court denied the renewed motion, ruling that any evidence of prior sexual conduct was inadmissible pursuant to the rape shield statute.

The district court has broad discretion to determine whether evidence is relevant and admissible, and absent a showing of an abuse of discretion, we will not overturn the district court's determination. State v. Passama (1993), 261 Mont. 338, 341, 863 P.2d 378, 380.

We have previously rejected the argument that a defendant may introduce evidence of how a victim obtained his or her knowledge of sexual matters. Van Pelt, 805 P.2d at 552. In Van Pelt, we concluded a defendant's attempt to show that the victim could have gained her knowledge of sexual matters outside of her contact with the defendant, was merely a guise to attack the credibility of the victim. We held that this type of attack upon the victim's credibility is impermissible under the rape shield statute. Van Pelt, 805 P.2d at 552.

In this case, one of the victims testified that he had acquired some knowledge of sexual matters at school. In so testifying, the -victim was not claiming that all of his knowledge

20

concerning sexual matters was gained through his contact with Steffes, and therefore, Steffes had no reason to rebut his testimony.

Finally, whether the victim had ever been as upset as the evening he told his parents about the actions of Steffes is not relevant to the issue of whether Steffes did the alleged acts. Therefore, we find no merit to this argument and hold that the District Court did not abuse its discretion in ruling that the evidence of prior sexual abuse was inadmissible.

ISSUE 7

Whether the District Court erred in refusing a lesser included offense instruction?

Steffes offered two proposed instructions that the charge of deviate sexual conduct included the lesser offense of endangering the welfare of children, which the District Court refused. Steffes claims the court erred by refusing the endangering the welfare of children instructions he offered.

Section 46-16-607(2), MCA, defines when a court must give a lesser included offense instruction. That section provides:

A lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense.

However, before a lesser included instruction may be given, the offense actually must constitute a lesser included offense. State v. Fisch (1994), 51 St.Rep. 907, 881 P.2d 626.

This court applies the test from Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, to determine

21

whether one crime is a lesser included offense of another.

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. . .

State v. Madera (1983), 206 Mont. 140, 151, 670 P.2d 552, 557-58. This Court looks to the statutory elements of the respective crimes to determine if each offense requires proof of a fact which the other does not to determine if there is indeed a lesser included offense. Madera, 670 P.2d at 558.

The elements at issue for the offense of deviate sexual conduct are: (1) knowingly; (2) causing another to engage in deviate sexual relations. Section 45-5-505, MCA. As noted earlier in this opinion, the term "deviate sexual relations" is defined as "sexual contact or sexual intercourse between two persons of the same sex. " Section 45-2-101(20), MCA.

The applicable elements of the crime of endangering the welfare of children are: (1) A person who is 18 years of age or older; (2) commits the offense of endangering the welfare of children if he; (3) knowingly; (4) contributes to the delinquency of a child less than 16 years old by assisting, promoting, or encouraging the child to; (5) engage in sexual conduct. Section 45-5-622(2)(b)(ii), MCA.

As is evidenced from the plain language of the applicable statutes, the offense of deviate sexual conduct requires proof that the persons were of the same sex. The offense of endangering the welfare of children requires proof of the ages of the offender and

22

the victim.  It is clear that each of the two crimes requires proof of additional facts which the other does not.  Therefore, we conclude that the crime of endangering the welfare of a child is not a lesser included offense of deviate sexual conduct. Accordingly we hold that the District Court did not err by refusing Steffes' proposed instructions.

## ISSUE 8

Whether the District Court erred in instructing the jury?

Steffes alleges the District Court erred by giving five of the State's proposed instructions and by refusing to give eight instructions which he offered.  We review each of Steffes' allegations of error in turn.

Steffes argues the court erred in giving the following five instructions:

(1) <u>Instruction No. 6</u>.

Steffes argues the instruction regarding the definition of knowingly was incomplete and misled the jury.  However, Steffes offers no authority for this proposition, nor does he offer any argument as to how the instruction was incomplete or misled the jury.  Accordingly we will not address this allegation of error. Rule 23(a)(4), M.R.App.P.; Allmaras v. Yellowstone Basin Properties (1991), 248 Mont. 477, 483, 812 P.2d 770, 773.

(2) <u>Instructions 9, 10, and 11</u>.

Steffes complains that the jury was not properly instructed on whether the sexual contact was for the purpose of gratifying the sexual desires of either party.  Steffes contends that whether the

23

sexual contact was done for the purpose of sexual gratification is an essential element of the crime, and the jury was not properly instructed regarding the sexual gratification element.

However, the instructions noted that the State must prove that Steffes caused the victims to engage in an act of deviate sexual relations "as defined in these instruction. ." [sic] Instructions 14 and 15 respectively defined the terms "deviate sexual relations" and "sexual contact." We therefore conclude the jury was properly instructed as to the elements of the crime.

(3) Instruction 17.

Steffes objected to this instruction because it stated that a defendant's purpose to gratify his sexual desire can be inferred from his conduct. However, according to Montana law, a defendant's intent to gratify his sexual desire may be inferred from his conduct. State v. McLain (1991), 249 Mont. 242, 246, 815 P.2d 147, 150; State v. Gilpen (1988), 232 Mont. 56, 69, 756 P.2d 445, 452. Therefore, we conclude the instruction was a correct statement of the law.

Steffes argues the court erred by failing to give the following instructions:

(a) Steffes' Provosed Instruction 6.

The court was correct in refusing this instruction concerning the testimony of the defendant because the instruction contained language regarding the defendant's failure to testify and Steffes testified at trial. Furthermore, the law concerning witness testimony was adequately covered in instruction 2.

24

(b) <u>Steffes' Proposed Instruction 8.</u>

Steffes' proposed instruction stated that the defendant could not be convicted by conjecture. Conjecture, however, was adequately covered in instructions 1 and 8.

(c) <u>Steffes' Proposed Instruction 19.</u>

The District Court was correct in refusing this instruction concerning expert opinion testimony, as it had previously correctly ruled that Steffes' expert could not give her opinion.

(d) <u>Steffes' Proposed Instruction 24.</u>

This instruction essentially recites the statutory definition of "purposely." 'The offense of deviate sexual conduct requires the State to prove the mental state "knowingly." Therefore, the court was correct in concluding that the definition of purposely was irrelevant.

(e) <u>Steffes' Proposed Amended Instruction 26.</u>

Steffes offered this instruction as the definition of the presumption of innocence. He maintains that the court's instruction gave "short shrift" to the defendant's presumption of innocence, and claims his own instruction should have been given instead. However, we conclude the court's instruction adequately informed the jury of Steffes' presumption of innocence.

(f) <u>Steffes' Proposed Instructions 28 and 29.</u>

Steffes' proposed instructions concerned the definition of reasonable doubt. However, this Court has specifically approved the instruction which was given as an appropriate definition of reasonable doubt. State v. Lucero (1984), 214 Mont. 334, 344, 693

25

P.2d 511, 516. We therefore conclude that the jury was properly instructed as regards the definition of reasonable doubt.

(g) Steffes' Proposed Instruction 35.

This instruction read as follows:

> You are instructed that if the testimony in this case, in its weight and effect, be such that two conclusions can be reasonably drawn from it, one favoring the defendant's innocence, and the other tending to establish his guilt, the jury should adopt the conclusion of innocence.

While this instruction is proper where the State's case rests substantially or entirely on circumstantial evidence, State v. Crazy Boy (1988), 232 Mont. 398, 403, 757 P.2d 341, 344, this case was based substantially on direct evidence, i.e., the testimony of the two victims. Therefore, the instruction was properly refused.

In reviewing whether a district court erred in instructing a jury, this Court determines whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Brandon (1994), 264 Mont. 231, 237, 870 P.2d 734, 737. Furthermore, while the general rule is that the defendant is entitled to have instructions on his theory of the case, "[t]he defense cannot insist that every nuance of its theory of the case be given to the jury via instructions." State v. Webb (1992), 252 Mont. 248, 253, 828 P.2d 1351, 1354. Upon a careful review of the instructions which were given in this case, we conclude that the instructions accurately reflected the applicable law. We also conclude that the court properly rejected Steffes' proposed instructions, for the reasons indicated. Accordingly we hold that the District Court properly instructed the jury.

26

Whether the District Court erred in not suppressing the search warrant?

Pursuant to J.W.'s statements that Steffes had shown him a condom and a bottle of Rush, the police obtained a search warrant to search Steffes home for condoms, Rush, or any other sexual aids. Upon executing the search warrant police officers found and seized five colored condoms and four bottles of Rush from the top drawer of Steffes' dresser.

On November 7, 1991, Steffes filed a motion to suppress the search warrant on three grounds, two of which he raises on appeal: (1) there was no probable cause to issue the search warrant, and (2) there was procedural error in the issuance and service of the warrant and that law enforcement was without authority to execute the warrant. The motion was submitted on briefs to the District Court, and it denied the motion in an Order and Memorandum dated May 21, 1992. Steffes renewed his objection to the court's denial of his motion to suppress in his motion for a new trial, which the District Court denied on August 5, 1993. Steffes appeals from that order.

The decision to grant a new trial is left to the sound discretion of the trial judge. Absent an abuse of that discretion, we will not overturn a denial of a motion for a new trial on appeal. State v. Arlington (1994), 51 St.Rep. 417, 427, 875 P.2d 307, 321.

Steffes first argues that the search warrant was issued without probable cause because law enforcement did not corroborate

or confirm J.W.'s testimony. However, while corroboration may be necessary in cases where police receive their information through an informant; a victim is not equivalent to an informant, and therefore those principles do not apply. In State v. Kelly (1983), 205 Mont. 417, 435-36, 668 P.2d 1032, 1042, we noted the difference between an informant and a victim of crime:

> [A]n 'informer,' in the narrow sense of that word, is by no means presumed to be a credible person. This means that it is generally necessary, as a prerequisite to establishing probable cause on the basis of what the informer has told the police, to establish that he is reliable (e.g., by showing that he has proved to be reliable on past occasions) or that his information is reliable (e.g., by showing that he has made an admission against his penal interest in the course of giving the information). By contrast, the average citizen who is thrust into the position of being a victim of or a witness to criminal conduct and who thereafter reports what he saw and heard to the police is generally presumed to be reliable, and thus no special showing of such reliability in the particular case is necessary.

Citing, W. LaFave, SEARCH AND SEIZURE § 3.5(a) (1978) at 619-20.

In reviewing whether probable cause exists: "the duty of the reviewing court is to ensure the magistrate had a 'substantial basis' for . . conclud[ing] that probable cause existed." State v. Wilson (1992), 254 Mont. 317, 318-19, 837 P.2d 1346, 1347. Here, the magistrate issued the search warrant upon application affirming the victim's statements to the police. We conclude that the information contained in the application demonstrated probable cause existed for the search warrant. We therefore hold that the District Court did not abuse its discretion in denying Steffes' motion for a new trial on that basis.

Steffes also attacks the search warrant's validity on the

28

ground that the search warrant was dated June 19, 1991, but was executed on June 18, 1991. In response to Steffes' argument, the State called Justice of the Peace Pedro Hernandez to **testify** concerning the discrepancy between the dates. Justice Hernandez swore that he signed the application at approximately 11:25 a.m. on June 18, 1991, and that the search warrant was issued at the same time. Justice Hernandez also testified that he did not type the June 19, 1991 date on the search warrant, but he stated that date was already on the search warrant when he signed it. Through Justice Hernandez' **testimony,** the District Court determined the discrepancy between the dates was merely technical, and did not affect the substantial rights of the defendant. We agree.

Section 46-5-103, MCA (1989), the controlling statute at the **time** the search warrant was issued, provides in pertinent part:

> When search and seizure not illegal. No search and seizure, whether with or without a warrant, shall be held to be illegal as to a defendant if:
> .
> (3) any irregularities in the proceedings do not affect the substantial rights of the accused.

Steffes has neither alleged nor shown that he suffered any prejudice as a result of the typographical error on the search warrant, nor does anything in the record indicate any possibility of prejudice arising from the error in dating the search warrant. See, United States v. McKenzie (6th Cir. 1971), 446 F.2d 949. Furthermore, we conclude that the State adequately explained any discrepancy between the date typed on the search warrant and the date it was executed. We therefore hold, that the District Court did not abuse its discretion in denying Steffes' motion for a new

29

trial on the basis that the search warrant was invalid.

In conclusion, after carefully considering all the issues raised by Steffes, we hold that the District Court did not commit reversible error on any of the issues raised on appeal. Accordingly, his conviction is AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

30