No. 96-662

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 6

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHN PARKER,

Defendant and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey G. Michael, Deputy Public Defender, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

Submitted on Briefs: December 18, 1997

Decided: January 15, 1998
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    John Parker (Parker) appeals from the decision of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to suppress evidence obtained during a consensual search of an automobile and denying his motion for directed verdict based on a variance between the State of Montana's (State's) affidavit in support of leave to file the information and the evidence it presented at trial.  We affirm.

## Factual and Procedural Background

¶2   On November 22, 1995, Officer Joseph Campbell (Officer Campbell) was patrolling traffic on Interstate 90 near Billings, Montana.  Officer Campbell was driving in the passing lane when he observed a red Audi with three adult occupants.  Charles Parker (Charles), Parker's brother, was driving the automobile.  Suzanne Surber (Suzanne) sat in the front passenger seat and Parker sat directly behind Suzanne in the right, rear, passenger seat.  Officer Campbell later discovered that a toddler was seated in a child restraint in the left, rear, passenger seat.

¶3   As Officer Campbell approached and proceeded to pass the Audi, he noticed what he described as unusual behavior.  Officer Campbell testified that the individuals exhibited an unusual amount of interest in the patrol car and that Suzanne seemed to be transporting something from the front seat to the backseat in what he described as "furtive" movements.  As a result of the occupants' unusual behavior, Officer Campbell ran a check on the vehicle's license plates and discovered that the plates were registered to a 1984 Pontiac 600, not an Audi.  While Officer Campbell requested the dispatcher to run a second check on the license plate, he exited the interstate, allowed the Audi to pass, then reentered the highway behind the Audi.  The Audi exited the interstate at Laurel Road, and Officer Campbell followed.  When the dispatcher confirmed the license plate information, Officer Campbell activated his patrol lights indicating that he wanted the car to pull over.  The Audi did not stop, but continued onto Parkway Road and finally stopped in a truck stop parking lot.

¶4   Officer Campbell approached the Audi and explained that the license plates were not registered to the Audi.  Charles indicated that he did not know anything about the plates and that Suzanne owned the vehicle.   Suzanne also denied knowing about the license plates, but agreed that she owned the Audi. Officer Campbell asked for identification and learned that Charles did not have a valid driver's license.  Suzanne, however, produced a valid driver's license. Officer Campbell then asked Suzanne why she was reaching around in the vehicle.  She explained that she was taking care of the toddler in the back seat.  Officer Campbell indicated that the movements seemed to be in the direction of Parker rather than the child.

¶5   Officer Campbell then asked Suzanne if she would accompany him to the patrol car to answer further questions.  She agreed.  Officer Campbell asked if the car contained any weapons, drugs or drug paraphernalia.  Suzanne indicated that it did not.  Officer Campbell explained that he suspected that the car contained such items because of Suzanne's suspicious movements which he claimed were not explained by her taking care of the child.  Officer Campbell then asked Suzanne if he could search the vehicle.  She consented to the search.

¶6   When Officer Campbell approached the vehicle to conduct the search, Parker was still seated in the vehicle.  Officer Campbell explained to Parker that he had consent from Suzanne to search the vehicle and asked Parker if he had any objections to the search. Parker indicated that he did not, and exited the Audi.  Before Officer Campbell began the search, he asked Parker if any of the items belonged to him.  Parker indicated that a box on the left passenger floor belonged to him and that it contained some books and video tapes.

¶7   Officer Campbell began his search by opening a purse located on the front passenger floor.  Inside the purse he found a small clear plastic cosmetic case containing Zigzag rolling papers and Visine eye drops.  He also found a leather pouch containing

a small mirror, an orange-colored hand-carved pipe and a film container covered in iridescent contact paper. The pipe contained a burnt residue and Officer Campell testified that he could smell the odor of burnt marijuana. The film container contained a straight glass pipe with white powdery residue, a razor blade, a hairpin with tarry residue and a small brown glass bottle. The small brown glass bottle had a black cap to which a small spoon hinged. The bottle also contained white powdery residue.

¶8 Officer Campbell discovered a black fanny pack on the rear deck of the Audi. The fanny pack was located near Parker's seat. Officer Campbell began to search the pack and asked the three occupants of the vehicle whom it belonged to; Suzanne indicated that it belonged to Parker. However, Officer Campbell testified that Charles, Suzanne and Parker all denied owning the fanny pack. The main compartment of the fanny pack contained three packages of temporary tattoos, a notebook, and a business card which said "John F. 'T.J.' Parker, Computer Consulting and Chemistry." The business card did not indicate an address or phone number. Officer Campbell testified that, when he found the business card, he believed the fanny pack belonged to Parker.

¶9 The notebook contained chemical formulas. On one page, a long chemical formula appeared with the word "meth" written at the end. Another compartment of the fanny pack contained a calculator and more business cards. In the rear compartment of the fanny pack, Officer Campbell found a blue nylon pouch containing a small pipe, two small Ziplock bags with powdery residue, two syringes, a razor blade, four Ziplock bags, three small plastic bindles, a teaspoon with a broken handle and a small glass bottle containing a clear liquid. Upon finding what he believed to be drug paraphernalia, Officer Campbell placed Charles, Suzanne and Parker under arrest. Officer Campbell informed them of their Miranda rights then asked Suzanne if he could continue searching the vehicle; Suzanne revoked her consent at this point. Officer Campbell transported them to the Yellowstone County Detention Facility where they were booked. Parker was charged with felony criminal possession of dangerous drugs and misdemeanor criminal possession of drug paraphernalia.

¶10 Subsequent testing of the items at the crime lab indicated that the pipe found in the fanny pack tested positive for tetrahydrocannabinol (THC), the active ingredient in marijuana. The glass bottle from the fanny pack tested positive for methamphetamine.

¶11 Prior to trial, Parker moved to suppress evidence seized from the fanny pack asserting that Suzanne's consent to search the vehicle was not a valid consent as to the fanny pack, therefore the search, conducted without a warrant, did not fall within a recognized exception to the warrant requirement. The District Court held a suppression hearing and denied the motion. In its findings of fact and conclusions of law, the court determined that Officer Campbell had a particularized suspicion warranting the investigative stop of the vehicle. Additionally, the District Court concluded that Suzanne, as the owner of the vehicle had authority to consent to the search and that her consent was voluntary. Finally, the court determined that Parker did not have standing to challenge the search of the vehicle.

¶12 A bench trial was held on May 20, 1996. Officer Campbell was the only witness to testify. At the conclusion of the State's case, defense counsel moved for a directed verdict claiming a fatal variance between the proof offered by the State at trial and that contained in the State's affidavit in support of leave to file the information. Defense counsel asserted that items found in Suzanne's purse were improperly entered into evidence at Parker's trial. Defense counsel further asserted that there was insufficient

evidence produced at trial that Parker possessed dangerous drugs. In its findings of fact and conclusions of law, the court determined that Parker's variance claim was without merit because any variance that existed between the State's affidavit and the evidence it produced at trial was not prejudicial to Parker and found Parker guilty of the charges. Parker appealed the denial of his motions to suppress and for directed verdict to this Court. We review two issues on appeal:

¶13   1) Did the District Court err in denying Parker's motion to suppress evidence obtained during a consensual search of a vehicle?

¶14   2) Did the District Court err in denying Parker's motion for directed verdict based on a variance between the State's affidavit and the evidence it produced at trial?

I

¶15   1) Did the District Court err in denying Parker's motion to suppress evidence obtained during a consensual search of a vehicle?

¶16   The Fourth Amendment of the United States Constitution and Article II, section 11 of the Montana Constitution protect individuals from unreasonable searches and seizures by requiring law enforcement to obtain a warrant. Warrantless searches and seizures are considered unreasonable per se under those constitutional provisions. State v. Graham (1995), 271 Mont. 510, 512, 898 P.2d 1206, 1208. However, Montana's statutory law and common law recognize certain exceptions to the constitutional warrant requirement. See § 46-5-101, MCA; State v. Rushton (1994), 264 Mont. 248, 870 P.2d 1355 (discussing the consent exception to the warrant requirement). The remedy for illegally obtained evidence is suppression. Section 46-13-302, MCA. Parker asserts that the evidence seized by Officer Campbell when he searched the Audi and the fanny pack should have been suppressed because the evidence was obtained without a warrant and does not fall within a valid exception to the warrant requirement.

¶17   The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. State v. Roberts (Mont. 1997), 943 P.2d 1249, 1250, 54 St.Rep. 745. The District Court found that Officer Campbell had a particularized suspicion warranting an investigative stop of the Audi. In addition, the court found that after stopping the vehicle, Officer Campbell obtained valid consent from the owner of the vehicle to conduct a search. The court concluded that the valid consent obtained from Suzanne did not limit the scope of the search, and since Parker was neither the driver nor the owner of the vehicle, he lacked standing to challenge the search.

¶18   As a preliminary matter, we address the District Court's finding that Officer Campbell had a particularized suspicion warranting an investigative stop of the Audi. The District Court concluded that: "The Officer had a particularized suspicion to stop the vehicle because the license plates were not registered to the vehicle, the occupants were making furtive gestures, and the vehicle did not stop immediately. [Section 46-5-401, MCA.] The totality of the circumstances warranted an investigative stop." Since the fact that the license plates were registered to another vehicle was a sufficient basis upon which to stop the Audi, we need not, and do not, express any opinion as to whether the passengers' so-called "furtive" movements formed a valid basis for an investigative stop.

¶19   While neither party raises the issue, we determine that the District Court erred in

concluding that Parker lacked standing to challenge the search of the vehicle. In our recent decision in State v. Bullock (1995), 272 Mont. 361, 901 P.2d 61, relying on Article II, section 11 of the Montana Constitution, we held that "when the charge against the defendant includes an allegation of a possessory interest in the property which is seized, the defendant has standing to object to the prosecutorial use of that evidence based on either the unlawful search of the location where it was found, or its unlawful seizure." Bullock, 901 P.2d at 68-69. Therefore, since Parker was charged with possession of certain items seized from the Audi, he has standing to challenge the legality of the search of the vehicle and the subsequent search of the fanny pack.

¶20 Nonetheless, we affirm a district court's ruling if the court reaches the correct result, even if it does so for the wrong reason. Knutson v. State (1984), 211 Mont. 126, 129, 683 P.2d 488, 490. Although we reject the District Court's conclusion that Parker lacked standing, we affirm the court's decision to deny the motion to suppress evidence obtained during the search of the Audi; we do so on the basis of consent. Consent which is given knowingly and voluntarily by an individual with the ability to consent is a recognized exception to the warrant requirement. Rushton, 870 P.2d at 1361. Parker asserts that Suzanne could not consent to a search of the fanny pack because it did not belong to her. However, we conclude that Officer Campbell could have reasonably believed that the consent to search the vehicle extended to the items in the vehicle.

¶21 Both parties rely on Florida v. Jimeno (1991), 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297, for the proposition that "[t]he Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile." Jimeno, 500 U.S. at 249. In Jimeno, the issue before the United States Supreme Court was whether it is reasonable for an officer to consider a suspect's general consent to a search of his car as including consent to examine a paper bag lying on the floor of the car. The Supreme Court found that it is not necessary for police who wish to search closed containers in a car to request permission to search each container in the car. Rather, the Supreme Court held that the basic test of objective reasonableness controls and if an individual's consent could reasonably be understood to extend to a particular container, a more explicit authorization is not required. Jimeno, 500 U.S. at 252.

¶22 The facts of this case indicate that it was objectively reasonable for Officer Campbell to believe that the consent he obtained from Suzanne as the owner of the vehicle and from Charles and Parker as the passengers extended to closed items in the vehicle, including the purse and the fanny pack. In addition, the fact that all three individuals denied ownership of the fanny pack is further evidence of the legality of the search. See generally § 46-5-103(1)(a), MCA (providing that "[a] search and seizure, whether with or without a warrant, may not be held to be illegal if . . . the defendant has disclaimed any right to or interest in the place or object searched or the evidence, contraband, or person seized"); but see State v. Isom (1982), 196 Mont. 330, 641 P.2d 417 (holding that Miranda limitations should apply to disclaimers when the State uses them in opposition to the Fifth Amendment right against self incrimination or when used to deprive a person of Fourth Amendment standing). Finally, Parker did not object or otherwise indicate that he was revoking his consent even after Officer Campbell began his search of the fanny pack. We conclude that Officer Campbell legally searched the vehicle and the closed containers in the vehicle under the consent exception to the warrant requirement and hold that the District Court did not err in denying Parker's motion to suppress evidence resulting from the search.

II

¶23  2) Did the District Court err in denying Parker's motion for directed verdict based on a variance between the State's affidavit and the evidence it produced at trial?

¶24  The decision of whether to direct a verdict is soundly within the discretion of the district court.  This Court will not disturb a district court's decision absent an abuse of discretion.  State v. Steffes (1994), 269 Mont. 214, 229, 887 P.2d 1196, 1205.

¶25  The purpose of the variance rule is to protect a defendant from being misled at trial and prosecuted twice for the same crime.  See  Steffes, 887 P.2d at 1205; State v. Holmes (1984), 212 Mont. 526, 533, 687 P.2d 662, 666.  Therefore, to be fatal, a variance must be both material to an essential element of the offense and prejudicial to a substantial right of the accused.  Steffes, 887 P.2d at 1205.  Parker claims that he was denied his right to fair notice and that the variance may leave him open to the risk of double jeopardy if the State refiles its affidavit and information correcting the mistakes.  Parker makes his variance claim based on facts contained in the State's affidavit submitted in support of its motion for leave to file the information.

¶26  The State argues that Parker's variance claim must fail because the affidavit is not a charging document.  The affidavit serves as part of the process when applying for leave to file an information and is simply proof of probable cause for the court to consider in determining whether a defendant has committed an offense warranting the filing of an information.  The State contends that, even if there was a variance between the affidavit and the proof at trial, it would not be considered fatal because the affidavit is not the charging document.  In other words, the only variance that would matter, so contends the State, is a variance between the information itself and the proof at trial.  We disagree.  A criminal defendant may, in conjunction with the contents of the information, rely on facts contained in the affidavit when determining how to structure a defense to charges.  The affidavit, as part of the process of filing the information, serves an important function.  Therefore, the fact that the affidavit is not the charging document is not determinative as to whether the variance is considered fatal.   If the contents of the affidavit, when read together with the charging document, were to mislead the defendant as to an essential element of the offense and prejudice a substantial right of the defendant, a variance between the affidavit and the proof at trial could be considered fatal.  As the State points out, however, that is not the situation in this appeal.

¶27  The State contends that Parker's claim of variance must fail because he was not denied fair notice and is not at risk for double jeopardy.  The State asserts that it offered the same evidence at the suppression hearing as it offered at trial; therefore, Parker had notice of the evidence that the State intended to offer at trial.  In addition, the record reveals that the variance in the affidavit was a clerical error in that the affidavit stated that
the evidence found in the purse was found in the fanny pack, and vice-versa.  The actual evidence presented at trial was listed in the affidavit, it simply was listed incorrectly.  Moreover, the information itself charged Parker with possessing the items in the fanny pack, "a small pipe of a type commonly used to smoke marijuana, syringes, razor blades, ziplock bags, folded paper bindles, a small teaspoon and a small glass bottle."  Under a similar set of facts, we determined that a variance in the affidavit was not fatal because the charging documents (the information and the affidavit) gave the defendant adequate notice of the crimes he must defend against. Holmes, 687 P.2d at 666-67 (concluding that the variance in the State's affidavit that VIP owned the fuel, and evidence presented at trial of ownership by possession was not fatal because "[a]ny change made by the State here did not prejudice appellant's defense or mislead him"); see also Steffes, 887 P.2d at 1205.

¶28  We determine that the facts stated in the affidavit and the information gave Parker reasonable notice so as to prevent any chance of his being misled as to the charges or any possibility of being prosecuted twice for the same offense.  Therefore, we hold that the District Court did not abuse its discretion in finding that Parker's variance claim was without merit and in denying his motion for directed verdict.   Affirmed.

/S/   W. WILLIAM LEAPHART


We concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  TERRY N. TRIEWEILER