No. 03-418

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 169

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CHINA BLUE MERRILL,

Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 2002-91,
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Amy N. Guth, Attorney at Law, Libby, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
Attorney General, Helena, Montana

Bernard G. Cassidy, County Attorney, Libby, Montana

Submitted on Briefs: May 26, 2004

Decided: June 29, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      China Merrill appeals from the order of the Nineteenth Judicial District Court, Lincoln County, entered on February 19, 2003, denying her motion to suppress evidence. We affirm.

¶2      The issue on appeal is whether the District Court erred in denying defendant's motion to suppress evidence by concluding that defendant was not unlawfully detained subsequent to an investigatory traffic stop and, further, that defendant had consented to a warrantless search.

## BACKGROUND

¶3      On November 18, 2002, Lincoln County Deputy Sheriff Shane Hight, supervised by Deputy Richard Larsen, pulled over Merrill for making an improper lane change. The two officers approached Merrill's car, Hight on the driver's side and Larsen on the passenger side. Hight asked Merrill for her driver's license, registration, and proof of insurance. Receiving these papers, Hight returned to the patrol car and called the dispatcher, from whom he learned the identity of the owner of the vehicle, who was not Merrill. Hight recognized the vehicle owner as someone suspected of involvement with dangerous drugs. Returning to Merrill, Hight gave her a verbal warning about the lane change and told her she was free to go. Merrill then asked if she was going to get a ticket, and Hight confirmed that he was just going to give her a warning.

¶4      Stepping away from the vehicle, Hight watched Merrill for a few seconds and noticed that Merrill was acting unusually nervous. As Larsen turned and headed back to the patrol

2

car, Hight, suspicious because of the report about the car owner, asked Merrill if he could talk to her for a minute. She answered that he could. Hight then asked her if he could search the car. Again, Merrill replied affirmatively. After Merrill stepped out of the car and closed the door, Hight asked if he could search her person, including her pockets. She said, "Okay." Hight requested that Merrill empty her pockets on the trunk of her car, and as she did so, he noticed a piece of cellophane that he suspected contained illegal drugs. During his testimony, Deputy Larsen conveyed what happened next:

A. He [Hight] said "What's that?" And she [Merrill] said, "That's just garbage."

Q. And then was there further conversation?

A. Shane [Hight] picked that up, and started to unwrap it, and said, "China, is this your meth?"

Q. And what did she say?

A. She said, "Yes."

The cellophane contained a substance that field tested positive for methamphetamine. Hight then placed Merrill under arrest, and Merrill was subsequently charged with possession of dangerous drugs.

¶5     Merrill filed a motion to suppress the evidence obtained in the search, which was denied by the District Court. Thereafter, the parties entered a plea agreement wherein Merrill pled guilty to the charge and reserved her right to appeal the denial of her motion to suppress. Pursuant to the terms of the plea agreement, the District Court deferred imposition of sentence. Merrill appeals.

STANDARD OF REVIEW

¶6    The standard of review of a trial court's grant of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Henderson*, 1998 MT 233, ¶ 9, 291 Mont. 77, ¶ 9, 966 P.2d 137, ¶ 9. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *Henderson*, ¶ 9.

DISCUSSION

¶7    ***Did the District Court err in denying defendant's motion to suppress evidence by concluding that the defendant was not unlawfully detained subsequent to an investigatory traffic stop, and, further, that defendant had consented to a warrantless search?***

¶8    Merrill contends that Hight's questioning of her which followed his verbal warning about the traffic violation constituted an unlawful seizure of her person. She maintains that no reasonable person would have felt free to leave with a patrol car's lights flashing behind her and an armed officer on either side of her car. She suggests that she was effectively surrounded. Based upon her assertion that she was not free to leave, Merrill contends that the search of her car and her person were not voluntary. Merrill argues that Hight's actions violated both the federal and state constitutions as well as governing state statutes.

¶9    The State rejoins that Merrill was free to decline to answer the officer's questions, and further, was free to deny his requests to search her and her effects because a reasonable person would have felt free to leave under these circumstances. The State notes that, despite Merrill's contention to the contrary, there is no evidence that the officers were "surrounding"

5

the car or otherwise impeding her departure from the scene of the traffic stop. Merrill was still putting away her documents, Larsen was returning to the patrol car, and Hight had stepped back from the vehicle when he requested permission to speak to her. Therefore, the State argues, at that point the seizure of the vehicle occasioned by the traffic violation had ended, and the interaction which followed was voluntary and permissible.

¶10 In *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, the United States Supreme Court concluded that a person is seized within the meaning of the Fourth Amendment "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.[1] In *State v. Roberts*, 1999 MT 59, 293 Mont. 476, 977 P.2d 974, we applied the *Mendenhall* test in determining whether the defendant had been "seized" for purposes of the Fourth Amendment. *Roberts*, ¶ 16.

¶11 Montana's constitutional search and seizure provision, Article II, Section 11, of the Montana Constitution, states as follows:

> **Searches and seizures.** The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

---

[1] The United States Supreme Court later revised *Mendenhall* by holding that, with respect to a show of authority, a seizure does not occur when the subject fails to yield. *California v. Hodari D.* (1991), 499 U.S. 621, 626, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690, 697. However, this Court has explicitly rejected the holding in *Hodari D.* for purposes of interpreting the Montana Constitution. *State v. Clayton*, 2002 MT 67, ¶ 21, 309 Mont. 215, ¶ 21, 45 P.3d 30, ¶ 21.

6

In *State v. Clayton*, 2002 MT 67, 309 Mont. 215, 45 P.3d 30, we reaffirmed the Fourth Amendment test applied in *Roberts* and further applied the test to such challenges brought under Article II, Section 11, of the Montana Constitution, stating that "the test for whether a seizure occurs is a purely objective one." *Clayton*, ¶ 22. We noted that "[t]his test is necessarily imprecise and will vary depending on the setting in which the conduct occurs." *Clayton*, ¶ 23.

¶12 In *Roberts*, a police officer pulled into a one-lane driveway, blocking the car of a driver suspected of driving under the influence. Though the suspect was not attempting to leave, this Court held that the officer's actions and show of authority would not have allowed a reasonable person to feel free to do so. Likewise, in *State v. Carlson*, 2000 MT 320, 302 Mont. 508, 15 P.3d 893, the officers prevented the occupants of a van who were suspected of illegal drug activity from leaving the scene, this time at gunpoint, making for a more compelling case of seizure.

¶13 In contrast, in *Clayton* we determined that officers who stopped their patrol car close to the left rear of a vehicle and shone a spotlight into it did not seize the driver. In *State v. Wagner*, 2003 MT 120, 315 Mont. 498, 68 P.3d 840, we determined that an officer who requested that a drunk man in a store accompany him outside did not present such a show of authority that a reasonable person would not have felt free to leave. *Wagner*, ¶ 31.

¶14 The current case is comparable to *Clayton* and *Wagner* in that neither of the officers impeded Merrill's exit from the scene after telling her she was free to go. *Roberts* and *Carlson* are distinguishable for the opposite reason. In those cases officers either physically

7

or by show of force blocked the suspects from leaving the scene. Here, Deputy Hight and Deputy Larsen took no such measures, and, according to uncontroverted testimony, Hight repeatedly sought Merrill's permission for his actions.

¶15 We conclude, therefore, that the officers' actions would not have made a reasonable person feel as though he could not leave. Hight had stepped away from the vehicle after specifically telling Merrill that he was just giving her a warning for the traffic violation and that she was free to go. Larsen, assuming the stop was concluding, had already turned and was heading back to the patrol car. Merrill was putting away her documents when Hight re-initiated conversation. There is nothing from the evidence which would indicate that Hight's manner suggested he was ordering Merrill to stay. He asked permission from her three times: to talk to her, to search her car, and to search her person. Under these circumstances, Merrill's acquiescence to Hight's requests is not indicative of a person seized, but of a consenting individual.

¶16 Merrill also argues that Hight exceeded his authority under § 46-5-403, MCA, which reads:

> **Duration of stop.** A stop authorized by 46-5-401 or 46-6-411 may not last longer than is necessary to effectuate the purpose of the stop.

Section 46-5-401(1), MCA, provides:

> **Investigative stop and frisk**. (1) In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense. If the stop is for a violation under Title 61, unless emergency circumstances

8

exist or the officer has reasonable cause to fear for the officer's own safety or for the public's safety, the officer shall as promptly as possible inform the person of the reason for the stop.

Although Merrill concedes that the initial investigatory stop made by the officers pursuant to § 46-5-401, MCA, was appropriate, she argues that once Hight stepped away from the vehicle, the original purpose of the stop was completed and Hight had no right to remain next to her car, and thus, the officers' actions thereafter violated the duration provisions of § 46-5-403, MCA.

¶17 Merrill correctly states that Hight had completed his investigation of the improper lane change. At that point, the investigatory stop had concluded. What followed, however, was neither a subsequent investigatory stop nor an extension of the first one. Rather, the subsequent encounter was a voluntary exchange, and no precept of law prevents an officer from engaging a citizen in such voluntary conversations. *See Mendenhall*, 446 U.S. at 553, 100 S.Ct. at 1876, 64 L.Ed.2d at 508 (citations omitted); *Roberts*, ¶ 14 n.5 ("[A] purely voluntary encounter between a law enforcement officer and a citizen intrudes upon no constitutionally protected interest and, thus, is accorded no protection under the Fourth Amendment.").

¶18 Finally, Merrill argues that the District Court failed to analyze her seizure claim in relation to probable cause and that it failed to examine the searches in relation to a judicially recognized exception to the warrant requirement. It is unclear whether Merrill intends to challenge only the constitutionality of the "seizure" of her person or if she means separately to include a challenge to the searches of her car and her pockets as well. However, because

she fails to develop any theme, supported by authority, tending to prove the illegality of the searches, we construe her argument as challenging the "seizure" of her person only. *See In re Estate of Spencer*, 2002 MT 304, ¶ 20, 313 Mont. 40, ¶ 20, 59 P.3d 1160, ¶ 20 ("The Court will not consider unsupported issues or arguments."); Rule 23(a)(4), M.R.App.P. (requiring that an appellant's argument contain citations to the authorities relied upon).

¶19 We further conclude that the District Court conducted a proper analysis of Merrill's seizure claim. Probable cause and warrant exceptions are analyzed to determine the propriety of a challenged search or seizure. *See State v. Van Dort*, 2003 MT 104, ¶ 18, 315 Mont. 303, ¶ 18, 68 P.3d 728, ¶ 18; *State v. Hardaway*, 2001 MT 252, ¶ 36, 307 Mont. 139, ¶ 36, 36 P.3d 900, ¶ 36. Merrill's claim involves a threshold issue of whether she was seized at all, the determination of which is properly made under the test we have articulated herein.

## CONCLUSION

¶20 Upon the conclusion of the investigatory stop, a reasonable person in Merrill's circumstances would have felt free to leave. Therefore, Merrill was not unconstitutionally seized, and the subsequent searches were voluntary. The District Court's findings of fact were not clearly erroneous, and those findings were correctly applied as a matter of law.

¶21 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM REGNIER