No. 04-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 269

STATE OF MONTANA,

Plaintiff and Respondent,

v.

COSHAUNN R. SNELL,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC 03–23
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Torger S. Oaas, Attorney at Law, Lewistown, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Anthony C. Johnstone,
Assistant Attorney General, Helena, Montana

Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  June 22, 2004

Decided:  September 28, 2004

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      Coshaunn R. Snell appeals from the judgment and sentence entered on his guilty pleas by the Tenth Judicial District Court, Fergus County, after the denial of his suppression motion. We affirm.

¶2      The restated issue is whether the District Court erred in denying Snell's motion to suppress evidence.

## BACKGROUND

¶3      On March 15, 2003, Montana Highway Patrol Officer Kelly Mantooth stopped Snell for speeding. He requested Snell's driver's license, registration and proof of insurance. Snell produced his provisional driver's license and the vehicle's registration, but he could not find proof of insurance. Mantooth instructed Snell to continue looking for proof of insurance and bring it to his patrol car. Mantooth then proceeded to the patrol car and learned from dispatch that Snell had a valid provisional license, no criminal record and no arrest warrants. Snell entered the patrol car and told Mantooth he could not find current proof of insurance, but believed the vehicle was insured. Mantooth advised he would cite Snell for failure to carry proof of insurance.

¶4      Mantooth questioned Snell about various subjects as he wrote the citation. Mantooth then issued the citation, returned Snell's license and registration and asked whether Snell would mind if he searched the vehicle. Snell consented. Before Mantooth conducted the

2

search, he asked if any items in the vehicle did not belong to Snell, and Snell indicated everything in the vehicle was his.

¶5 During the search, Mantooth found marijuana and drug paraphernalia. The State of Montana subsequently charged Snell by information with the felony offense of criminal possession with intent to distribute and the misdemeanor offenses of criminal possession of dangerous drugs and criminal possession of drug paraphernalia.

¶6 Snell moved to suppress the evidence obtained during the vehicle search. The parties briefed the motion and the District Court held a hearing. Mantooth testified and a videotape of the stop was admitted into evidence. Snell conceded he voluntarily consented to the search, and the State conceded Mantooth lacked probable cause. The District Court denied Snell's motion. Snell later pled guilty to all three charges, reserving the right to appeal the denial of his motion to suppress. The District Court accepted his pleas and entered a judgment and sentencing order. Snell appeals.

## STANDARD OF REVIEW

¶7 We review a district court's ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law are correct. *State v. Olson*, 2002 MT 211, ¶ 7, 311 Mont. 270, ¶ 7, 55 P.3d 935, ¶ 7 (citation omitted).

## DISCUSSION

¶8 Did the District Court err in denying Snell's motion to suppress evidence?

*a. Consent*

3

¶9     The United States and Montana Constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Art. II, Sec. 11, Mont. Const. Warrantless searches and seizures are *per se* unreasonable, with few exceptions. *State v. Lanegan*, 2004 MT 134, ¶ 16, 321 Mont. 349, ¶ 16, 91 P.3d 578, ¶ 16 (citation omitted). Consent is a recognized exception to the warrant requirement. *Olson*, ¶ 20 (citation omitted).

¶10    The District Court concluded that, because Snell voluntarily consented to the search, probable cause was not needed. It relied on *State v. Parker*, 1998 MT 6, 287 Mont. 151, 953 P.2d 692, which upheld a vehicle search based on consent alone.

¶11    Snell contends that *Parker* is in conflict with our later decision in *State v. Elison*, 2000 MT 288, 302 Mont. 228, 14 P.3d 456, which he characterizes as requiring both probable cause and an exception to the warrant requirement to validate a warrantless vehicle search. Snell posits that, notwithstanding his consent, the vehicle search in the present case is unlawful pursuant to *Elison* because the State concedes the absence of probable cause. His position is without merit.

¶12    *Parker* directly addressed the consent exception to the warrant requirement. There, an officer stopped a vehicle after confirming its license plates were registered to a different vehicle. *Parker*, ¶ 3. The officer learned the front seat passenger was the vehicle's owner, questioned her and obtained her consent to search the vehicle. *Parker*, ¶¶ 4-5. The defendant, who was in the backseat, did not object to the search. *Parker*, ¶ 6. Among other things, the officer discovered a fanny pack containing chemical formulas, the defendant's

4

business card and various items of drug paraphernalia. The defendant was charged with drug offenses. *Parker*, ¶¶ 7-9. The defendant moved to suppress the evidence obtained from the fanny pack prior to trial and the district court denied the motion. *Parker*, ¶ 11. We affirmed on appeal, reasoning in part that the officer had particularized suspicion to initiate the stop, the vehicle's owner voluntarily consented to the search and the officer could have reasonably believed the consent extended to all items in the vehicle--including the fanny pack. *Parker*, ¶¶ 18, 20-22.

¶13     *Elison*, on the other hand, addressed the "exigent circumstances" exception to the warrant requirement vis-a-vis the so-called "automobile exception." There, the district court determined a warrantless search was lawful because an officer had probable cause to believe the defendant's vehicle contained marijuana and the failure to obtain a warrant was excused by exigent circumstances--namely, the mobility of the vehicle, the possibility a confederate could move it and the difficulty of obtaining a search warrant at 12:05 a.m. *Elison*, ¶ 36. On appeal, we determined the officer had probable cause to believe the vehicle contained marijuana. *Elison*, ¶ 42. We also determined, pursuant to controlling precedent from the United States Supreme Court, that a warrantless search of a readily mobile vehicle--together with probable cause to believe the vehicle contains contraband--is not unreasonable under the Fourth Amendment to the United States Constitution. *Elison*, ¶¶ 39-42.

¶14     We then addressed at length our jurisprudence relating to the "automobile exception" under the Montana Constitution, which provides significantly greater privacy rights to Montanans than the United States Constitution. *Elison*, ¶¶ 43-53. We concluded that

5

there is no "automobile exception" to the search warrant requirement under the Montana Constitution. Rather, as we have consistently held, a warrantless search of an automobile requires the existence of probable cause as well as a generally applicable exception to the warrant requirement such as a plain view search, a search incident to arrest, or exigent circumstances.

*Elison*, ¶ 54. We ultimately reversed, concluding the district court's finding of exigent circumstances was clearly erroneous. *Elison*, ¶¶ 55-59.

¶15 Unlike *Parker*, *Elison* did not involve the consent exception to the warrant requirement. Nor does it impose a probable cause requirement for consensual searches. Thus, *Parker* and *Elison* are not in conflict.

¶16 Snell next relies on *State v. Carty* (N.J. 2002), 790 A.2d 903. There, the New Jersey Supreme Court addressed its jurisprudence under the New Jersey Constitution and expanded its prior constitutional standard for consensual searches to require that an officer have reasonable and articulable suspicion of wrongdoing before requesting consent to search a vehicle. *Carty*, 790 A.2d at 912. *Carty* is based on the New Jersey Constitution and is not controlling authority in Montana. Moreover, the *Carty* court discussed compelled consent and the "widespread abuse" of authority by New Jersey law enforcement in obtaining consents to vehicle searches. *See Carty*, 790 A.2d at 910-11. Here, Snell concedes he voluntarily consented to the search and does not argue--much less establish--that Montana law enforcement officers are abusing their authority. Therefore, *Carty* is not persuasive.

¶17 It is undisputed that Mantooth had particularized suspicion to stop Snell's vehicle. Montana law does not require additional justification for requesting consent. We conclude

6

the District Court did not err in determining Snell's voluntary consent was sufficient to justify the warrantless search of his vehicle.

### b. Illegal Detention

¶18 An officer may conduct an investigative stop of a vehicle that "is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401, MCA. Pursuant to § 45-2-101(72), MCA, a stop is "the temporary detention of a person that results when a peace officer orders the person to remain in the peace officer's presence." When a police officer restrains a person's freedom, such as in detaining him or her during a brief investigatory stop of a vehicle, the officer has seized that person. *State v. Kaufman*, 2002 MT 294, ¶ 14, 313 Mont. 1, ¶ 14, 59 P.3d 1166, ¶ 14 (citations omitted).

¶19 The District Court rejected Snell's argument that his consent was invalid because Mantooth illegally detained him by requesting consent after completing the traffic stop. It reasoned in part that Snell's position was not supported by Montana law.

¶20 Snell contends Mantooth illegally detained him after issuing the citation and, therefore, the evidence should have been suppressed because his consent resulted from an illegal detention. In response, the State contends that, because Mantooth did not coerce or restrain him, Snell was free to leave and was not seized at the time he consented to the search.

¶21 We addressed similar arguments in two recent cases decided after the District Court proceedings in the present case had ended and briefing on appeal was complete. In *State v.*

7

*Merrill*, 2004 MT 169, ¶ 3, 322 Mont. 47, ¶ 3, 93 P.3d 1227, ¶ 3, deputy sheriffs pulled the defendant over for making an improper lane change, and one deputy issued a warning and told the defendant she was free to go. Both deputies stepped away from the vehicle, but one deputy noticed the defendant was acting nervous and asked to speak with her and to search her car and her person. The defendant agreed to all three requests, and the search of her person revealed a substance which later proved to be methamphetamine. *Merrill*, ¶ 4. The defendant moved to suppress and the district court denied the motion. *Merrill*, ¶ 5.

¶22     On appeal, the defendant argued she was unlawfully seized after the warning, and the State responded that the encounter was voluntary. *Merrill*, ¶¶ 8-9. We began our analysis by determining that a person is seized "'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Merrill*, ¶ 10 (quoting *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509). We observed we had previously applied this test to seizure issues raised under both the Fourth Amendment to the United States Constitution and Article II, Section 11, of the Montana Constitution. *Merrill*, ¶¶ 10-11 (citing *State v. Roberts*, 1999 MT 59, 293 Mont. 476, 977 P.2d 974, and *State v. Clayton*, 2002 MT 67, 309 Mont. 215, 45 P.3d 30). In addition, the test is "'purely objective.'" *See Merrill*, ¶ 11 (quoting *Clayton*, ¶ 22). Applying the test to Merrill's encounter with the deputies, we concluded a reasonable person would have felt free to leave because both deputies had stepped away from the defendant's car, nothing in the deputy's manner indicated he was

ordering the defendant to stay and the deputy asked permission to talk with the defendant and to search her car and person. *Merrill*, ¶ 15.

¶23 In *State v. Hill*, 2004 MT 184, ¶ 5, 322 Mont. 165, ¶ 5, 94 P.3d 752, ¶ 5, an officer stopped the defendant for speeding, obtained his driver's license and learned from dispatch that the rental car had not been reported as stolen. The officer then issued a citation for speeding, returned the driver's license and said "we're done." Noticing the defendant had no bags or clothes in the car, the officer initiated small talk and obtained the defendant's consent to search the car, but not the trunk. The officer observed nothing incriminating in the passenger area. *Hill*, ¶¶ 6-7. After further questioning, another officer on the scene called the car rental agency and was told the car was two days overdue and the driver was not an authorized driver. The rental agency consented to a search of the vehicle, which revealed a duffel bag containing marijuana and hashish. *Hill*, ¶¶ 9-10. The defendant moved to suppress and the district court denied the motion. *Hill*, ¶ 11.

¶24 On appeal, the defendant argued that, once the citation for speeding was issued, the officer had no justification to engage him in small talk and that doing so constituted an unlawful detention. *Hill*, ¶ 14. Relying on *Merrill*, we determined the investigatory stop concluded when the officer returned the license and indicated the matter was over. *Hill*, ¶¶ 15-17. We also determined that a reasonable person would have believed he was free to leave and, therefore, the subsequent conversation was a voluntary exchange. As a result, we concluded the defendant was not unlawfully seized. *Hill*, ¶ 17.

¶25 Pursuant to *Merrill* and *Hill*, we determine whether Snell was illegally detained--that is, unlawfully seized--by considering whether a reasonable person in Snell's situation would believe he was free to go. The present case differs from *Merrill* and *Hill* in that Snell was sitting in Mantooth's patrol car and Mantooth did not expressly state that Snell was free to go or the matter was done. As in *Merrill*, however, no evidence indicates that Mantooth ordered Snell to stay. *See Merrill*, ¶ 15. Further, nothing of record indicates that Mantooth attempted to restrain Snell or prevent him from exiting the vehicle. In view of all the circumstances surrounding the incident, we conclude a reasonable person would have felt free to leave Mantooth's patrol car upon completion of the traffic stop. Therefore, we further conclude that the post-stop interaction between Mantooth and Snell was a voluntary exchange rather than an illegal detention or an unlawful seizure.

¶26 Snell relies on *State v. Martinez*, 2003 MT 65, 314 Mont. 434, 67 P.3d 207, for the proposition that an officer must have particularized suspicion of criminal activity to continue detaining a defendant after completing a traffic stop. In *Martinez*, a district court denied two defendants' motions to suppress evidence obtained during a vehicle search conducted after one defendant--who was handcuffed and placed in a separate patrol car from the co-defendant--confessed the vehicle contained marijuana. *Martinez*, ¶¶ 9-12. On appeal, we applied the requirement of § 46-5-403, MCA, and *Terry v. Ohio* (1968), 392 U.S. 1, 28-29, 88 S.Ct. 1868, 1883-84, 20 L.Ed.2d 889, 910, that an investigative stop may not last longer than is necessary to effectuate the purpose of the stop. We determined the officer's

particularized suspicion supporting the initial traffic stop did not justify further police intrusion after the stop's limited purpose had been accomplished. *Martinez*, ¶¶ 27-29.

¶27 The requirement that an officer have additional justification to detain an individual after completing a traffic stop--as set forth in *Martinez* and § 46-5-403, MCA--applies only when an individual is actually detained. In *Merrill*, ¶ 17, we determined the deputy's post-stop interaction with the defendant did not violate § 46-5-403, MCA, because it was "neither a subsequent investigatory stop nor an extension of the first one," but a voluntary encounter. The same analysis applies here and, indeed, we already have concluded that Snell was not illegally detained or seized at the time he consented to the vehicle search. Thus, *Martinez* is inapposite. For the same reasons, we need not address Snell's argument that Mantooth's stated reasons for requesting consent to search were insufficient to establish particularized suspicion to justify a continued detention.

¶28 We hold the District Court did not err in denying Snell's motion to suppress evidence.


¶29 Affirmed.

/S/ KARLA M. GRAY


We concur:

/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE


11