No. 05-260

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 182

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JOHN O. COPELTON,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                         In and For the County of Gallatin, Cause No. DC 04B280
                         Honorable Mike Salvagni, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Eric M. Brewer, Gallatin County Public Defender's Office
                Bozeman, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; John Paulson,
                Assistant Attorney General, Helena, Montana

                Marty Lambert, Gallatin County Attorney; Jami Rebson,
                Deputy County Attorney, Bozeman, Montana


                             Submitted on Briefs:  April 26, 2005

                                   Decided:  August 8, 2006


Filed:

                    _____
                               Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 John O. Copelton (Copelton) appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, on his conviction and sentence for the offense of criminal possession of dangerous drugs with intent to distribute. We affirm.

¶2 The issue on appeal is whether the District Court erred in denying Copelton's motion to suppress evidence.

## BACKGROUND

¶3 On August 24, 2004, Belgrade City Police Officer Mike Dixon (Dixon) was dispatched to JR's Lounge in Belgrade, Montana, to investigate a report of suspicious activity involving several persons who appeared to be "casing" the bar and moving back and forth between the bar and a red vehicle located in the parking lot. Upon arriving at JR's Lounge, Dixon observed a red vehicle in the parking lot matching the description given in the report. Montana Highway Patrol Officer Jason Hoppert (Hoppert) also responded to JR's Lounge to provide assistance to Dixon. Hoppert arrived at the location at approximately the same time as Dixon.

¶4 The officers found Copelton sitting inside the red vehicle. Hoppert remained with Copelton while Dixon went to the bar to investigate the report. Dixon made contact inside with Ruben Garcia (Garcia). Garcia stated that he was responsible for the red vehicle, which he had borrowed from a friend in Oregon, and that he, Copelton and another person had traveled from Oregon to Montana in it. Dixon asked Garcia to produce registration for the

2

vehicle. Garcia agreed and accompanied Dixon outside. Garcia walked to the passenger side of the vehicle, reached into the glove box and produced some papers, which he handed to Dixon.

¶5 Dixon then asked Garcia if the officers could search the vehicle. Garcia responded by shrugging his shoulders and making a gesture which the officers interpreted as his consent to the search. The officers began to search the vehicle and discovered methamphetamine. They stopped the search and later obtained a search warrant authorizing a further search of the vehicle during which more methamphetamine was discovered.

¶6 The State of Montana (State) subsequently charged Copelton by information with the felony offense of criminal possession of dangerous drugs with intent to distribute, based on its allegation that Copelton possessed nearly a pound of methamphetamine with the intention of selling it. Copelton moved the District Court to suppress the evidence obtained during the search of the vehicle, arguing that Garcia's consent to the initial search of the vehicle was not voluntary and there were no other applicable exceptions to the search warrant requirement which authorized the initial search. The District Court held an evidentiary hearing on the motion at which Dixon, Hoppert, Garcia and Copelton testified, and subsequently entered its findings of fact, conclusions of law and order denying Copelton's motion to suppress.

¶7 Copelton subsequently pled guilty to the charged offense, expressly reserving his right to appeal the District Court's denial of his motion to suppress. The District Court sentenced Copelton to twenty years at the Montana State Prison and entered judgment. Copelton appeals.

3

## STANDARD OF REVIEW

¶8 We review a district court's ruling on a criminal defendant's motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and its interpretation and application of the law correct. *State v. Wetzel*, 2005 MT 154, ¶ 10, 327 Mont. 413, ¶ 10, 114 P.3d 269, ¶ 10.

## DISCUSSION

¶9 *Did the District Court err in denying Copelton's motion to suppress evidence?*

¶10 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals from unreasonable searches and seizures. *State v. Snell*, 2004 MT 269, ¶ 9, 323 Mont. 157, ¶ 9, 99 P.3d 191, ¶ 9. A search or seizure conducted in the absence of a valid warrant is *per se* unreasonable unless justified by a recognized exception to the warrant requirement. *Snell*, ¶ 9. Knowing and voluntary consent to a search is a recognized exception to the warrant requirement. *Snell*, ¶ 9.

¶11 It is undisputed here that the officers did not have a search warrant authorizing the initial search of the vehicle. Based on the testimony presented at the suppression hearing, however, the District Court determined that Garcia gave the officers his knowing and voluntary consent to search the vehicle. Consequently, the court concluded the initial search was justified by the consent exception to the warrant requirement and denied Copelton's motion to suppress the evidence obtained as a result of the search. Copelton asserts error.

¶12 Copelton first contends that the State must establish probable cause for the search in addition to a knowing and voluntary consent to the search, relying on *State v. Shaw*, 2005

4

MT 141, 327 Mont. 281, 114 P.3d 198. He asserts the State presented no evidence at the suppression hearing establishing the existence of probable cause to search the vehicle. He also points out that the District Court's order denying his motion to suppress included no findings of fact or conclusions of law regarding the existence of probable cause to search. On that basis, he argues the District Court incorrectly applied the law and, therefore, erred in denying his motion.

¶13 The State responds that there is no probable cause requirement for a search where the investigating officers obtain knowing and voluntary consent prior to conducting the search. The State contends we previously addressed and rejected an identical probable cause argument in *Snell*. We agree.

¶14 In *Snell*, a highway patrol officer stopped the defendant for speeding. After issuing the defendant a citation for failure to carry proof of insurance, the officer asked if he could search the defendant's vehicle. The defendant consented and the officer found marijuana and drug paraphernalia in the vehicle. The defendant subsequently moved the district court to suppress the drug evidence obtained during the search. He conceded he voluntarily consented to the search and the State conceded the officer did not have probable cause for the search. *Snell*, ¶¶ 3-6. The district court relied on *State v. Parker*, 1998 MT 6, 287 Mont. 151, 953 P.2d 692, in concluding that an officer need not have probable cause where there is voluntary consent to a search, and denied the defendant's motion to suppress. *Snell*, ¶ 10.

¶15 On appeal, the defendant argued that the rule stated in *Parker* conflicted with our subsequent decision in *State v. Elison*, 2000 MT 288, ¶ 54, 302 Mont. 228, ¶ 54, 14 P.3d 456,

5

¶ 54, in which we stated that a warrantless vehicle search requires both probable cause and a recognized exception to the warrant requirement such as plain view, search incident to arrest or exigent circumstances. The defendant asserted that, although he voluntarily consented to the search of his vehicle, the officer did not have the requisite probable cause for the search and, therefore, the search was unlawful pursuant to *Elison*. *Snell*, ¶ 11. We concluded, however, that the two cases were not in conflict because *Parker* directly addressed the consent exception to the warrant requirement without requiring a finding of probable cause, while *Elison* addressed the exigent circumstances exception and did not impose a probable cause requirement on consensual searches. *Snell*, ¶¶ 12-15. Consequently, we affirmed the district court's conclusion that the defendant's voluntary consent was sufficient, in and of itself, to justify the warrantless search of his vehicle. *Snell*, ¶ 17.

¶16 Less than a year after *Snell*, we decided *Shaw*. There, a deputy sheriff stopped the defendant for speeding. During the course of the stop, the deputy asked the defendant whether he could search her car and the defendant consented. The deputy discovered an open container of alcohol and drug paraphernalia in the vehicle. The State subsequently charged the defendant with several drug-, alcohol- and driving-related offenses. The defendant moved to suppress the evidence obtained during the search of her vehicle, arguing that the deputy had coerced her consent to the search by using threats. The district court denied the motion. *Shaw*, ¶¶ 3-4.

¶17 In addressing the consent to search issue on appeal, we cited *Elison* for the proposition that "[a] warrantless search of a vehicle in Montana requires both the existence of probable

6

cause and a generally recognized exception to the warrant requirement." *Shaw*, ¶ 7. We then concluded, based on the facts and circumstances of the case, that the deputy possessed the requisite probable cause and the defendant knowingly and voluntarily consented to the search of her vehicle. *Shaw*, ¶ 12. Nowhere in *Shaw* did we reference *Snell* and our holding therein that there is no probable cause requirement for a warrantless search of an automobile based on a knowing and voluntary consent to the search.

¶18 We take this opportunity to reaffirm our holding in *Snell*. A knowing and voluntary consent, in and of itself, is sufficient to justify a warrantless search of an automobile. Therefore, we reverse that portion of *Shaw* which requires a finding of probable cause in conjunction with the consent exception to the search warrant requirement. As a result, we need address only Copelton's arguments regarding the knowing and voluntary nature of Garcia's consent to the vehicle search.

¶19 Courts apply the totality of the circumstances test in determining whether consent has been voluntarily given and is uncontaminated by coercion or duress. *Wetzel*, ¶ 16. Thus, the determination of voluntariness of consent is dependent on the facts of each case, with no single fact being dispositive. *State v. Dawson* (1988), 233 Mont. 345, 352, 761 P.2d 352, 356.

¶20 Garcia, Dixon, Hoppert and Copelton testified at the hearing on Copelton's motion to suppress. The following facts, supported by testimony at the hearing and found by the District Court, are essentially undisputed. Garcia was born in Mexico and has lived in the United States since 1993. He received six years of education while growing up in Mexico.

At the time of the vehicle search at issue here, Garcia was 29 years old and had only a limited understanding of the English language. Garcia testified, however, that he had prior experiences with law enforcement officers and has had his vehicle searched on other occasions. He further stated that, notwithstanding his limited knowledge of English, he clearly understood what Dixon was asking when the officer requested his consent to search the vehicle. In response to Dixon's request, Garcia shrugged his shoulders and gestured with his hands in an affirmative manner. Garcia testified that he consented to the search and did not care whether the officers searched the vehicle because he did not have anything to hide.

¶21 Dixon and Hoppert both testified that, upon being asked to consent to a search of the vehicle, Garcia responded by shrugging his shoulders, nodding his head affirmatively and saying "yeah" or "yeah, sure." Dixon conceded that he did not inform Garcia of his right to refuse to consent to the search. Copelton also testified that, after Dixon requested permission to search the vehicle, Garcia shrugged his shoulders, gestured and looked at Copelton. Copelton interpreted Garcia's movements as asking Copelton for advice on how to respond to Dixon.

¶22 Based on the above facts, the District Court concluded that "[u]nder the totality of the circumstances Garcia's consent was freely and voluntarily given and uncontaminated by any express or implied duress or coercion." Copelton asserts that this conclusion is erroneous. He contends that three factors exist which establish that Garcia's consent to the vehicle search was not knowingly and voluntarily given.

8

¶23     First, Copelton argues that Garcia's limited education with no instruction regarding the American legal system weighs heavily against his ability to voluntarily consent to a search. However, Copelton provides no authority for the proposition that an American education or instruction on the American legal system is required for a person to be able to knowingly and voluntarily consent to a search. Moreover, Garcia testified that he had prior experiences with law enforcement while in the United States, including prior vehicle searches, and he understood what Dixon was asking when the officer requested to search the vehicle. Garcia stated that he consented to the search because he had nothing to hide and did not care whether the officers looked through the vehicle. We conclude that Garcia's limited foreign education did not impede his ability to knowingly and voluntarily consent to the vehicle search.

¶24     Second, Copelton asserts that Garcia's limited understanding of the English language at the time of the search indicates he could not knowingly consent to the search and that "[i]t is unclear that Garcia fully understood what he was being asked to do." As discussed above, however, this assertion directly contradicts Garcia's testimony at the suppression hearing. We conclude Garcia's limited abilities to speak and understand English did not impede his ability to knowingly and voluntarily consent to the search.

¶25     Third, Copelton contends that the fact that the officers did not inform Garcia he had the right to refuse to consent to the vehicle search weighs in favor of a determination that the consent was not knowing and voluntary. Copelton concedes, however, that lack of knowledge of the right to refuse consent is not determinative that the consent was not

voluntary in and of itself. *See Wetzel*, ¶ 19. In light of Garcia's statement that he did not care whether the officers searched the vehicle, we conclude the officers' failure to inform him of his right to refuse to consent does not render his consent unknowing or involuntary under the totality of the circumstances.

¶26 Finally, Copelton makes a passing assertion that "a mere shrug of the shoulders was not enough to indicate to the officers that Garcia was giving consent to search." We have held, however, that nonverbal consent can be effective where the conduct indicates unequivocal consent to the search. In *Dawson*, we concluded that, where a law enforcement officer requested permission to enter the defendant's motel room, the defendant's actions of stepping back, opening the door wider and not objecting by words or action to the officer's entry into the room indicated unequivocal, voluntary consent. *Dawson*, 233 Mont. at 352-53, 761 P.2d at 357. Here, Garcia, Dixon and Hoppert all testified that Garcia responded to Dixon's request to search the vehicle by shrugging his shoulders, nodding his head and making an affirmative gesture with his hands. All three further testified that Garcia's affirmative gestures clearly indicated his consent to the vehicle search. Copelton's argument in this regard is without merit.

¶27 We conclude the District Court did not err in determining that, under the totality of the circumstances, Garcia's consent to the vehicle search was freely and voluntarily given. We hold, therefore, that the District Court did not err in denying Copelton's motion to suppress evidence.

¶28 Affirmed.

10

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE