FILED

04/18/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0074

DA 16-0074

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 89

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

MICHAEL LEE BATY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Deer Lodge, Cause No. DC-14-64
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Dana A. Henkel, Terrazas Law Offices, Missoula, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
            Attorney General, Helena, Montana

            Ben Krakowka, Deer Lodge County Attorney, Anaconda, Montana

Submitted on Briefs:  January 18, 2017

Decided:  April 18, 2017

Filed:

_____
Clerk

Michael E Wheat delivered the Opinion of the Court.

¶1  Michael Lee Baty (Baty) appeals from the April 22, 2015 order of the Third Judicial District Court, Deer Lodge County, denying his motion to suppress evidence seized during the warrantless search of the vehicle Baty was driving. On April 29, 2015, Baty entered a plea agreement with the State, pleading guilty to the possession of dangerous drugs and drug paraphernalia. Baty preserved his right to appeal the District Court's denial of his motion to suppress evidence.

¶2  We address the following issues on appeal:

*Issue One: Did the District Court make sufficient findings of fact and conclusions of law in its order denying Baty's motion to suppress?*

*Issue Two: Did the District Court err in denying Baty's motion to suppress evidence seized during the warrantless search of the vehicle Baty was driving?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3  On the evening of December 5, 2014, Police Officer Kristopher Vauthier (Vauthier) observed a car with a non-functioning headlamp drive past him in the opposite direction. Vauthier stopped the vehicle and shined his spotlight on the car. As he approached the driver's door, he noticed a large quantity of Ziploc bags in the back seat. When he saw Baty in the driver's seat, he immediately recognized him from several prior encounters and, from a previous investigation a few weeks earlier, knew that Baty's driver's license was suspended. Baty told Vauthier that the passenger, Shawn James Miller (Miller), was the owner of the car and that he was driving because Miller had been drinking. Vauthier asked both Baty and Miller for their driver's licenses and both responded that they did not have

2

licenses. Vauthier arrested Baty and placed him in the back seat of the patrol car, later confirming that Baty's license was still suspended.

¶4 Two additional officers arrived at the scene while Vauthier was taking Baty to the patrol car. Officer Jack Doemel (Doemel) also had prior experience with Baty and knew him to be a drug user. The police department had also received reports that Baty was a drug dealer. Doemel approached the driver's door and began speaking with Miller, who was still in the passenger's seat. While speaking with Miller, Doemel saw a six pack of beer in the back seat of the car and learned that Miller was on probation and not allowed to consume alcohol. Doemel also learned from Miller that the car belonged to Miller's parents, who had given him permission to drive it. Miller stated that he asked Baty to drive the car because Miller did not have a driver's license.

¶5 Doemel and Miller then had the following exchange, as recorded by the officer's body camera:

> Doemel: Alright, Shawn, well, here's the deal, I mean, because you're on conditions . . .
>
> Miller: Yes.
>
> Doemel: Um, I know we can already see alcohol in the back. I'm going to ask you for permission to search the vehicle. I'm going to ask you because you're in control of the vehicle, if your mom let you use it. You realize you don't have to give me permission to search and you can stop the search at any time, right?
>
> Miller: Yes.
>
> Doemel: Okay. Do I have permission to search the vehicle?
>
> Miller: Uh, I don't even . . . I know that there's tool bags in the trunk, I think, and uh . . . I, I mean, there's a few . . .

3

Doemel: Alright now don't be grabbing knives and stuff on me, Sean.

Miller: But I know there's a couple of those that were in here.

Doemel: Okay.

Miller: Other than that, man, the water bottle back there's mine and I got a Gatorade around here somewhere.

Doemel: Alright, Sean. So do we have your permission to search the vehicle then?

Miller: Yes, sir.

¶6 Doemel and Vauthier then searched the vehicle, discovering both drugs and drug paraphernalia in a compartment near the steering wheel, in the center console between the front seats, and in a sunglasses case on the passenger side floor board.

¶7 On December 15, 2014, the State charged Baty by Information with criminal possession of dangerous drugs, a felony, and with criminal possession of drug paraphernalia, a misdemeanor, in violation of §§ 45-9-102 and 45-10-103, MCA.[1] On February 12, 2015, Baty moved the District Court to suppress evidence, seeking to exclude the evidence obtained from the stop and warrantless search of the vehicle. On March 18, 2015, the District Court held a motions hearing and, on April 22, 2015, the court entered its order denying Baty's motion.

¶8 On April 29, 2015, Baty entered into a plea agreement with the State. Under the agreement, Baty pled guilty to both the felony and misdemeanor drug charges, but

---

[1] The State also charged Baty with driving while license is suspended or revoked, a misdemeanor, in violation of § 61-5-212, MCA, but the charge was withdrawn during the plea agreement process.

preserved his right to appeal the District Court's denial of his motion to suppress. The District Court accepted the plea agreement and, on December 11, 2015, entered its judgment, finding Baty guilty of both the felony and misdemeanor drug charges. The court deferred sentencing on the felony drug charge, and sentenced Baty to six months in jail, with all suspended, for the misdemeanor drug charge. Baty filed a timely appeal with this Court.

## STANDARD OF REVIEW

¶9 We review a district court's denial of a motion to suppress to determine whether the district court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law. *State v. Olson*, 2003 MT 61, ¶ 11, 314 Mont. 402, 66 P.3d 297 (citing *State v. Dawson*, 1999 MT 171, ¶ 13, 295 Mont. 212, 983 P.2d 916). Whether a district court's findings of fact meet the statutory requirements is a question of law which we review for correctness. *In re L.L.A.*, 2011 MT 285, ¶ 7, 362 Mont. 464, 267 P.3d 1 (citing *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 5, 339 Mont. 107, 168 P.3d 662).

¶10 In reviewing a district court's ruling on a motion to suppress evidence or statements, we determine whether the court's underlying factual findings are clearly erroneous and whether the court's interpretation and application of the law are correct. *State v. Copelton*, 2006 MT 182, ¶ 8, 333 Mont. 91, 140 P.3d 1074; *State v. Bassett*, 1999 MT 109, ¶ 17, 294 Mont. 327, 982 P.2d 410; *State v. Loh*, 275 Mont. 460, 475, 914 P.2d 592, 601 (1996). The court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if our

5

review of the record leaves us with a definite or firm conviction that a mistake has been made. *State v. DeWitt*, 2004 MT 317, ¶ 21, 324 Mont. 39, 101 P.3d 277; *Loh*, 275 Mont. at 475, 914 P.2d at 601.

## DISCUSSION

¶11 *Issue One:  Did the District Court make sufficient findings of fact and conclusions of law in its order denying Baty's motion to suppress?*

¶12 Baty first argues that the District Court's order should be reversed because the court failed to set forth any findings of fact to support its general conclusions of law, in contravention of § 46-13-104(3), MCA.  The State contends that the court stated sufficient findings of fact and conclusions of law, as reflected in the transcript of the motions hearing proceedings and in the order itself.  We agree with the State.

¶13 Under § 46-13-104(3), MCA, a trial court's "determination of any pretrial motion must state, either in writing or on the record, the court's findings of fact and conclusions of law."  Section 46-13-104(3), MCA.  "The litmus test is whether a district court's order sets forth reasoning, based upon its findings of fact and conclusions of law, in a manner sufficient to allow informed appellate review."  *Snavely v. St. John*, 2006 MT 175, ¶ 11, 333 Mont. 16, 140 P.3d 492 (citing *Shammel v. Canyon Res. Corp.*, 2003 MT 372, ¶ 28, 319 Mont. 132, 82 P.3d 912).  While it is not the Court's role "to review the record with the purpose of making our own findings," we have "long adhered 'to the doctrine of implied findings[,] which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence.'"  *Snavely*, ¶ 11 (citing *Continental Realty, Inc. v. Gerry*, 251

6

Mont. 150, 154, 822 P.2d 1083, 1086 (1991)); *Brunette v. State*, 2016 MT 128, ¶ 36, 383 Mont. 458, 372 P.3d 476 (quoting *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985)). This Court will consult both hearing transcripts and written findings to make an implied finding determination. *Brunette*, ¶ 36 (citing *In re S.M.*, 2014 MT 309, ¶ 28, 377 Mont. 133, 339 P.3d 23).

¶14 In this case, Baty's motion to suppress sought to exclude evidence obtained from the stop and warrantless search of the vehicle Baty was driving because he claimed: 1) Vauthier did not have particularized suspicion to stop the vehicle; and 2) the officers did not request Baty's consent to search the vehicle. As to the first issue, this Court has held that the lawfulness of a traffic stop under the Montana Constitution depends on whether the officer had a particularized suspicion that an occupant of the vehicle has committed or is committing an offense. *State v. Farabee*, 2000 MT 265, ¶ 30, 302 Mont. 29, 22 P.3d 175. In Montana, it is unlawful for a vehicle driving on public roads to be without at least two properly functioning headlamps. Sections 61-8-104, 61-9-203(1), MCA. Thus, the District Court was required to make a finding that Vauthier had a particularized suspicion that Baty was driving without a functioning headlight. The District Court's order stated that "during oral argument the [c]ourt ruled that the traffic stop was legal," a conclusion supported by the transcript of the proceedings wherein the court stated:

> I'm comfortable with the fact of the stop at this point. . . . The officer testified that the light was out. I'll look at the [in car] video again, but I don't think it's going to overcome Officer Vauthier's testimony, might confirm it, so the stop itself was good.

7

Thus, the court's general findings necessarily include implied findings sufficient to conclude that Vauthier had a particularized suspicion to stop Baty for a non-functioning headlight. Accordingly, we conclude that the District Court did not err in failing to provide more specific findings as to the lawfulness of the stop.

¶15 Regarding the issue of consent, the District Court's order made findings of fact necessary to conclude that the officers conducted a lawful warrantless search of the vehicle Baty was driving. The court found that: 1) Miller had permission to use the vehicle from his parents, the owners of the vehicle, and gave the officers consent to search the vehicle; 2) Baty identified Miller as the owner of the car and did not object to the search; and 3) there was "no evidence to suggest that the officers purposely removed the Defendant for the sake of avoiding a possible objection." Based on these facts, the District Court's order cited Montana case law in support of its specific legal conclusion that the police conducted a lawful warrantless search in this case because Miller "had common authority to grant consent for the search of the vehicle and his consent was legally sufficient to justify a warrantless search." Accordingly, we conclude that the District Court set forth sufficient findings of fact and conclusions of law to allow informed appellate review.

¶16 *Issue Two: Did the District Court err in denying Baty's motion to suppress evidence seized during the warrantless search of the vehicle Baty was driving?*

¶17 Baty next argues that the District Court erred in denying his motion because the officers violated his constitutional right of privacy when they conducted a warrantless search of the vehicle without Baty's knowledge or consent. The State argues that the court

8

properly denied Baty's motion because Baty had no expectation of privacy in the vehicle he was driving.

¶18 Both the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution provide that the people shall be free from unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. Additionally, the Montana Constitution provides that the right of individual privacy shall not be infringed without the showing of a compelling state interest. Mont. Const. art. II, § 10. "We have repeatedly held that Montana's unique constitutional language affords citizens a greater right to privacy, and, therefore, provides broader protection than the Fourth Amendment in cases involving searches of private property." *State v. Ellison*, 2000 MT 288, ¶ 46, 302 Mont. 228, 14 P.3d 456. Such protections extend to warrantless searches of automobiles. *Ellison*, ¶ 47.

¶19 The District Court determined that the search of the vehicle Baty was driving was legal because the passenger, Miller, had common authority to grant consent for the search of the vehicle. We agree with the District Court. "Once a stop has been made pursuant to a particularized suspicion, Montana law does not require additional justification for requesting consent." *State v. Clark*, 2008 MT 419, ¶ 25, 347 Mont. 354, 198 P.3d 809 (citing *State v. Snell*, 2004 MT 269, ¶ 17, 323 Mont. 157, 99 P.3d 191). We have repeatedly held that a warrantless search is not unlawful when the police obtain the free and voluntary consent of the defendant or a third party who possesses common authority over the private property sought to be inspected. *State v. Goetz*, 2008 MT 296, ¶ 41, 345 Mont. 421, 191 P.3d 489; *State v. Sorenson*, 180 Mont. 269, 275, 590 P.2d 136, 140 (1979) (stating that

9

"when the prosecution seeks to justify a warrantless search by proof of a voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.") (quoting *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974)). This rule applies so long as there is no evidence that the police have removed a potentially objecting party to avoid a possible objection to the search. *See Georgia v. Randolph*, 547 U.S. 103, 121, 126 S. Ct. 1515, 1527 (2006).

¶20 Without deciding whether Baty had a legitimate expectation of privacy in this case and assuming, arguendo, that Baty did have an expectation of privacy here, we conclude that the police did not need to obtain Baty's consent to search the vehicle and its internal compartments because Miller's consent was voluntarily given and sufficient to justify the warrantless search. Miller had permission from his parents to use the vehicle and thus had common, if not superior, authority to Baty to consent to the of search the vehicle. Additionally, the record supports the conclusion that the police removed Baty from the vehicle because he was operating it unlawfully, not because they sought to avoid a possible objection from Baty regarding the search.

**CONCLUSION**

¶21 We conclude that the District Court did not err in denying Baty's motion to suppress. For the foregoing reasons, we affirm.

/S/ MICHAEL E WHEAT

10

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE